Gary Lee QUIGG, Petitioner,
Appellant,

v.

W. J. ESTELLE, Jr., Warden, Montana
State Prison, and the State of Mon-
tana, Respondents-Appellees.

No. 72–2169.

United States Court of Appeals,
Ninth Circuit.

Feb. 11, 1974.

David J. Patterson (argued), Mont.,
Defender Project, Missoula, Mont., for
petitioner-appellant.

Jonathan B. Smith, Asst. Atty. Gen.
(argued), Robert L. Woodahl, Atty. Gen.
of Mont., David V. Gilko, Asst. Atty.
Gen., Helena, Mont., for respondents-ap-
pellees.

Before MERRILL and TRASK, Cir-
cuit Judges, and KELLEHER,* District
Judge

PER CURIAM:

Appellant was convicted of first de-
gree murder in a Montana State Court
on March 31, 1969; the Montana Su-
preme Court affirmed. State v. Quigg,
155 Mont. 119, 467 P.2d 692 (1970).
Appellant then petitioned the United
States District Court for the District of
Montana for a writ of habeas corpus.
In support of his petition, appellant
argued that: (1) The affidavits in sup-
port of the search warrants used to pro-
cure evidence used against him in his
trial did not establish probable cause for
issuance of those warrants, and (2) The
warrants in question violated the Fourth
Amendment because they were "general
warrants" and did not describe the
items to be seized with the required par-

* Honorable Robert J. Kelleher, United States District Judge, Central District of California,
sitting by designation.

ticularity. The District Court found both of these contentions to be without merit and denied the petition. We affirm.

The question presented by petitioner centers around the use of an unidentified informant's hearsay statements that the defendant was known to have guns similar to the one used in the murder and that the informant believed such guns were kept in petitioner's home or automobile. The portion of the affidavit in question reads as follows:

> "That Gary Lee Quigg is known to have had .22 guns in his possession, a caliber which is identical with the gun caliber that killed Mr. Robbins and said guns were believed kept in the home or kept in automobiles in possession of said Gary Lee Quigg."

Petitioner questions the absence of any showing before the magistrate of factual observations in the affidavit which led the Justice of the Peace to credit the conclusionary statements therein that the guns were in the possession of the defendant; appellant argues that the affidavit does not satisfy the test set down in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Aguilar requires that a magistrate or justice of the peace be presented with some of the underlying circumstances from which an informant concludes that the object of the search is where the informant claims it to be, and some of the underlying circumstances from which the affiant concludes that the informant was credible or his information reliable. Petitioner asserts that *Aguilar* has not been satisfied because the Montana Justice of the Peace who issued the warrant had before him none of the underlying circumstances on which to base his assessment of the informant's conclusion that the items to be seized were in defendant's home or automobile.

▌ Petitioner would ask us to scrutinize the affidavit and require it support a finding of fact by the magistrate that the gun was in his possession, or at

his home, before a warrant could issue. Such a strict standard is not required. "In dealing with probable cause . . . we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . ." Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). ". . . [A]ffidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a common sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once enacted under common law pleadings have no proper place in this area." United States v. Harris, 403 U.S. 573, 577, 91 S.Ct. 2075, 2079, 29 L.Ed.2d 723 (1971).

In the present case, the relevant facts from which the Justice of the Peace found probable cause to issue the warrant are summarized as follows: (1) On April 8, 1968, in Yellowstone County, Montana, Lee Robbins was killed; (2) Near Robbins' body were found shell casings of a gun similar in caliber to the gun which killed Robbins; (3) In June 1968 a crime was committed in Stillwater County, Montana, in which shell casings were found. F.B.I. analysis demonstrated that these shell casings were fired by the same gun that fired the shell casings found near Robbins' body; (4) A participant in the Yellowstone County crime told police that one of the other two participants in that crime had fired a gun in the commission of the crime; (5) Petitioner was one of the three participants in the Yellowstone County crime and was known to own a gun of the caliber used to kill Robbins and used in the commission of the Yellowstone County crime.

Such facts might clearly lead a reasonably prudent man to believe that petitioner had the murder weapon in his possession. The Justice of the Peace also had underlying circumstances which

gave credit to this information. The informant, a participant in the Stillwater County crime, informed the police that a gun had been fired in the commission of this crime. This declaration was against the informant's penal interest and as such could be used to credit his reliability and the information which he gave to the police. "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interest, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." United States v. Harris, 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L. Ed.2d 723 (1971).

From the assertions made in the affidavit and the facts which were known to the Justice of the Peace, we believe a reasonable man could conclude that petitioner had the murder weapon in his possession. We therefore find the search warrant to have been valid in this respect.

■ Petitioner's second contention is that the warrants issued were void for lack of particularity relating to what items were to be seized. Objection is made to the phrase "any other property or evidence they might discover that may connect to the demise of Lee Robbins," and the use of the word "any" to describe the .22 caliber pistol. Petitioner contends that the use of such words made the warrant a general warrant and as such is prohibited by the Fourth Amendment's requirement that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." We do not agree with petitioner's contention.

Use of the phrase "any other property or evidence they might discover that may connect to the demise of Lee Robbins" does not render this a general warrant. We regard this phrase as directing the officers to conduct a search within the ambit of lawful police activity as set down in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). There the Supreme Court set the limits of the "plain view" doctrine. The officer must have prior justification for being where he is and the find must be inadvertent, i. e., the officer cannot know in advance that the item was there. The warrant in this case was no more than a codification of powers the officers already had. The officers certainly had a prior justification to be where they were, based on the valid warrant to search for the .22 caliber pistol and gold wristwatch; they did not have previous knowledge of the evidence they gathered. It would be incongruous to make illegal what may otherwise be done legally simply because it was contained within the warrant. "The doctrine [of plain view] serves to supplement the prior justification—whether it be a warrant for another object . . . or some other legitimate reason for being present . . . and permits the warrantless seizure." Coolidge v. New Hampshire, *supra*, at 466, 91 S.Ct. at 2038, 29 L.Ed.2d 564. In the instant case, the police happened on the cellophane package of pills and gun box inadvertently while in search of items specifically listed in the warrant. Having established a nexus between the item to be seized and the criminal behavior, they could lawfully seize these items. Warden v. Hayden, 387 U.S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782 (1967).

■ Petitioner also contends that use of the phrase "any .22 caliber pistol" is not sufficiently particular. The District Court's analysis of this point is well taken; it is as follows:

"The fact that the words 'any .22 caliber pistol' were used does not make the warrant so broad as to violate the Fourth Amendment requirement of particularity of description of items to be seized. The police, in their affidavit, presented the Justice of the Peace with information upon which there was probable cause to believe that a .22 caliber pistol had been used in the

killing of Robbins. The police did not know the make or serial number of the pistol. To require them to set forth information they could not know, under the guise of particularity, is to thwart reasonable police activity."

Affirmed.