**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ronald BARBER, Defendant-**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Frank DINSIO, Defendant-**
**Appellant.**

Nos. 73–2547, 73–2872, 73–2575 and 73–2873.

United States Court of Appeals,
Ninth Circuit.

April 17, 1974.

Jack M. Schulman (argued), Schulman & Schulman, Cleveland, Ohio, Victor Sherman, Nasatir, Sherman & Hirsch, Beverly Hills, Cal., for appellant Barber.

Victor Sherman (argued), Nasatir, Sherman & Hirsch, Beverly Hills, Cal., for appellant Dinsio.

Robert C. Bonner, Asst. U. S. Atty. (argued), William D. Keller, U. S. Atty., Los Angeles, Cal., for the United States.

Before DUNIWAY, CARTER and WRIGHT, Circuit Judges.

## OPINION

EUGENE A. WRIGHT, Circuit Judge:

Ronald Barber and James Dinsio appeal from convictions for conspiracy to burglarize a bank and to receive property stolen therefrom [18 U.S.C. §§ 371, 2113] and for stealing property exceeding $100 in value from a bank [18 U.S.C. § 2113(b)]. We affirm.

These appellants and five co-conspirators were indicted ten months after the burglary of the United California Bank in Laguna Niguel, California. The convictions of the co-conspirators, Mulligan, Christopher and Amil Dinsio (a brother of appellant herein), were affirmed by this court in United States v. Mulligan, 488 F.2d 732 (9th Cir. 1973). Those de-

fendants were convicted also of entering the bank, a charge of which the appellants herein were found not guilty by a jury verdict.

On a weekend in March 1972, the bank vault was entered after a hole had been blasted through the roof of the building. The bank's alarm systems had apparently been cut and the burglary was not discovered until the following Monday morning. More than 500 safety deposit boxes had been forced open and the loss was eventually estimated to exceed $2,000,000, much of it in gold coins, some of them quite rare. Some of the loot and burglary tools were later discovered in Ohio at the residence of Amil Dinsio, United States v. Mulligan, *supra,* at 735.

Shortly before the burglary, the appellant Ronald Barber lived in an apartment in South Gate, California. The other conspirators, including James and Amil Dinsio, lived in Ohio but had made numerous trips by air to southern California and, in the month before the burglary, rented motel space there. James Dinsio made a down payment on a ski boat three weeks before the bank burglary and took delivery of it on the weekend of the burglary, paying $4,200 in cash. The boat was delivered to the residence of Barber in South Gate, and was later towed to Ohio by Ronald Barber.

### 1. *The motion to suppress.*

Five searches were made, including one of Ronald Barber's apartment in South Gate in June 1972. The warrant for that search described several rare coins and other collector type coins, believed to be the fruits of the bank burglary. The government agents also found and seized a walkie-talkie and a shortwave radio. Before trial, the appellants moved to suppress the radios on the ground that the search warrant was not based on probable cause. On the first day of trial, they moved again to suppress, this time claiming that the search preceded the issuance of the warrant. Both motions were denied and

those grounds have been abandoned on appeal.

When the radios were introduced, appellants objected, contending for the first time that the radios were beyond the scope of the warrant. It is this ground for suppression that appellants now urge on appeal.

Appellants contend that the radios were found after the coins were discovered and were the fruits of an overbroad search, not being listed in the warrant. Only after the FBI agents testified during the trial, say the appellants, did it become apparent that the radios were seized after the coins were found. The argument is that the defendants were unaware of facts to support their motion until they objected during the trial and that their motion was, therefore, timely.

■ Appellants' explanation of their failure to move to suppress on this ground before trial is unconvincing. They had known before trial that the warrant did not describe the radios, although they may not have known whether the "plain view" doctrine might have applied. *See* Quigg v. Estelle, 492 F.2d 343 (9th Cir. 1974). This should have been explored during the pre-trial motion to suppress. The fact that the radios were not named in the warrant was sufficient notice that there was likely to be an issue of the sort now raised. *See* United States v. Blackwood, 456 F.2d 526, 529 (2d Cir. 1972), Small v. United States, 396 F.2d 764, 765 (5th Cir. 1968).

■ The evidence at trial indicates that the search for coins had not been completed when the radios were discovered. We are persuaded by the logic of Quigg v. Estelle, *supra,* where we said:

> In the instant case, the police happened on the cellophane package of pills and gun box inadvertently while in search of items specifically listed in the warrant. Having established a nexus between the item to be seized and the criminal behavior, they could lawfully seize these items. Warden v.

Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

Quigg v. Estelle, 492 F.2d at 345.

The district court did not err in denying the motion to suppress the radios.

2. *Adequacy of the jury instruction concerning "aiding and abetting."*

■ The district court instructed the jury:

> In a case where two or more persons are charged with the commission of a crime, the guilt of any defendant may be established without proof that he personally did every act constituting the offense charged.

> Whoever commits an offense against the laws of the United States, or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal. Whoever willfully causes an act to be done which, if directly performed by himself or another, would be an offense against the United States, is punishable as a principal.

> In other words, every person who willfully participates in the commission of a crime may be found guilty of that offense.

Shortly thereafter, the jury was instructed that

> "[w]illfully" means an act or failure to act was done voluntarily with full knowledge of the consequences and a deliberate volition of the mind to accomplish the act prohibited by the law or to fail to do an act required by the law.

Appellants contend that the court should further have instructed the jury that the defendants were not "aiders and abettors" if they were mere "knowing spectators." Moore v. United States, 356 F.2d 39 (5th Cir. 1966). But the instruction that the defendants must have been "willful participants" reasonably negated any impression the jury might have had that a "knowing spectator" was an "aider and abettor."

*See* Loux v. United States, 389 F.2d 911, 921 (9th Cir. 1968).

### 3. *The testimony of Karen Tipps.*

■ Miss Tipps testified that she attempted to call Barber by telephone for a week before the burglary and finally reached him on the Monday night after it was committed. On the telephone, he told her it was none of her business where he had been. There followed these questions and answers:

Q. Did he indicate to you in any way who he had been with?

A. Yes, he indicated that he had been with his uncle.

Q. Did he, if you recall, indicate this uncle by any name?

A. No, he did not.

Q. Now, did he indicate to you, do you recall, where he and his uncle had been?

A. Other than out of town, no.

Q. Did he indicate to you, if you recall, during the course of this conversation, where his uncle was from? If you recall.

A. I cannot recall whether he told me or I assumed that it was his uncle from Ohio.

Miss Tipps testified to other conversations with Barber, in one of which he said he was going to Ohio, "driving back a boat for his uncle." The uncle's name was not indicated and the record indicates that Barber had at least three uncles in or from Ohio, all of the surname of Dinsio.

The statements attributed to Barber did not directly inculpate James Dinsio. Appellant, Dinsio contends that this hearsay testimony about statements made by his co-defendant was inadmissible under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

But, our view of the record leads us to conclude that Barber's statements that he was "driving a boat for his uncle" and that he had spent a weekend with his "uncle from Ohio" were insufficiently incriminating of James Dinsio to require reversal. In light of other evidence of guilt, which was overwhelming, this testimony could have had but slight effect on the jury. In the circumstances of this case, any technical violation of the rule of *Bruton* was harmless beyond a reasonable doubt. Courtney v. United States, 486 F.2d 1108, 1111 (9th Cir. 1973).

### 4. *The introduction of the coins as evidence.*

■ Appellants argue that it was error for the district court to admit coins identified as being of the same date, type, and condition as coins stolen from the bank. The coins were found either in a defendant's possession or in the possession of a person with whom a defendant may have done business. Appellants argue that since the coins were not positively identified as having been stolen from the bank, they were inadmissible.

The argument misses the point. It is not the law that evidence is admissible only if it positively proves the fact in support of which it is offered. It is sufficient that the evidence *tends* to support that fact. The fact that defendants were connected with coins identical to those stolen from the bank *tends* to support the conclusion that defendants were connected with the burglary. While this may be far from conclusive evidence, it has some probative value. Appellants' objection goes only to the weight of the evidence, not its admissibility.

We have carefully considered appellants' other assignments of error and find them to be without merit.

Affirmed.