Juan LOPEZ, Appellant,

v.

STATE of Texas, Appellee.

No. 13–81–214–CR.

Court of Appeals of Texas,
Corpus Christi.

June 17, 1982.
Rehearing Denied Aug. 26, 1982.

Gene A. Garcia, Corpus Christi, for appellant.

Wm. B. Mobley, Jr., Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and YOUNG and GONZALEZ, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a conviction for aggravated robbery. The jury assessed punishment at fifteen years' confinement. Appellant presents eight grounds of error for reversal.

Early on the morning of May 8, 1978, the Foodland grocery store in Shoppers' World mall in Corpus Christi was held up by a lone gunman wearing coveralls, gloves, black makeup around the eyes, and a ski mask. The robber apparently let himself into the establishment with keys in his possession and lay in wait for someone who could open the store's safe. When an assistant manager and two employees arrived to open the store, the attacker surprised them inside. At gunpoint, the stockmen were made to lie on the floor and the manager forced to open the safe and remove cash and checks to a cloth bag produced by the robber. The assailant then escaped through the store's rear exit.

The manager who was robbed identified appellant at a police line-up and later at the trial as the perpetrator of the crime. Appellant was a former city policeman. He was recognized and stopped by Pete Rodriguez, a police detective, a few blocks from the Shoppers' World less than fifteen minutes after the robbery. Rodriguez testified that the appellant appeared to be carrying something under his arm and that he ducked behind some bushes as the detective drew near. Appellant reappeared when the policeman stopped his car but without any object in his hands. According to Rodriguez, appellant appeared very nervous, was shaking and perspiring heavily. Appellant's shoes were damp and had grass on them. Rodriguez also noticed a black substance around appellant's eyes and mouth.

When Rodriguez mentioned robbery, appellant inquired whether it was at Shoppers' World.

Rodriguez drove appellant to his home at his request. He then returned to the bushes near where he had picked up appellant and found a pair of overalls which were later identified at trial by the victims as like those worn by the robber. Meanwhile, other officers following leads from the mall found the cloth bag with money, checks identified as from Foodland, the ski mask and a police scanner radio in a nearby field. Following a trail of footprints through the wet grass, these officers were led in the direction of the area where Rodriguez had met the appellant. At that point, they met Rodriguez, who showed them the overalls he had found.

With the information then put together, the officers got warrants to arrest appellant and search his residence. The search netted an automatic pistol and a pair of shoes, both of which the victims identified at trial as similar to what they observed during the robbery.

Fibers taken from the overalls were identified by an expert as resembling a carpet in appellant's residence. Another expert analyzed hairs recovered from the ski mask and known hairs from appellant's head. This expert testified that the chances of the resemblance he found between the hair samples occurring at random was one in 1.5 $\times$ $10^{10}$ (1 in 15,000,000,000).

■ In the first ground of error, appellant challenges the sufficiency of the evidence to prove that appellant committed the robbery. In his brief, appellant's counsel treats the case as one of circumstantial evidence, despite the identification of appellant by one of the victims. We do not think the fact that the appellant benefited from a circumstantial evidence jury charge should change the standard of review. Regardless, when the sufficiency of the evidence is challenged, we are required to view the evidence in the light most favorable to the verdict. *Clark v. State,* 543 S.W.2d 125 (Tex.Cr.App.1976). With this rule in mind, and after reviewing all such evidence in the record, we hold the evidence sufficient to sustain the conviction. Point of error number one is overruled.

As part of its effort to tie the appellant to the offense, the State introduced the testimony of Dr. John Randall, an expert in the "neutron activation analysis" method of hair identification and comparison. Randall testified about tests he had made comparing known samples of appellant's hair with some two to four strands recovered from a ski mask which was found in a field near the scene along with money, checks and food stamps taken in the robbery. This testimony was not favorable to appellant.

The matter of the hair analysis was a subject of controversy in the case. Prior to the trial, appellant's counsel moved to suppress the evidence on the ground that the taking of locks of hair for purposes of comparison violated his constitutional privilege against compulsory self-incrimination.

■ We agree with the State's contention that a hair sample, like handwriting and voice exemplars, is an identifying physical characteristic unprotected by the fifth amendment. See *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *United States v. Euge,* 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980).

■ Even if appellant's permission to take the hair was required, no error is shown. Before any testimony concerning the hair analysis was admitted, the court, outside the presence of the jury, heard direct testimony on the circumstances of the collection of appellant's hair from the officer who collected the sample and from appellant. The officer testified that the appellant voluntarily provided the sample hairs. In such situations, the trial court is the sole judge of the credibility of the witnesses and can accept or reject all or part of the testimony of any witness, including the defendant. *Kelly v. State,* 621 S.W.2d 176 (Tex.Cr.App.1981); *White v. State,* 591 S.W.2d 851 (Tex.Cr.App.1979). Ground of error number four is overruled.

Another point of contention at the trial was the availability of hairs from the ski mask for testing by an expert of appellant's choosing. All of the hair found in the mask was sent to Dr. Randall for testing. The record is unclear as to the ultimate fate of that sample. There was conflicting testimony as to whether hairs subjected to neutron activation analysis could be accurately retested using the same method.

Appellant claims the trial court erred in not declaring a mistrial because the State failed to provide the defense with a sample of the unknown hair for testing. We cannot tell from appellant's brief when in the trial this alleged error took place. Appellant also fails to indicate where the record discloses that the sought-after evidence was in fact available, tested or untested. Nothing is presented for review.

■ Assuming the hair samples were suppressed by the prosecution, we find no reversible error. To warrant reversal, the evidence suppressed must be shown to be exculpatory. *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *Ransonette v. State,* 550 S.W.2d 36 (Tex.Cr.App. 1976).

■ The circumstances of this case are analogous to those in driving-while-intoxicated cases in which used breathalyzer ampoules are discarded and unavailable for retesting. The unavailability merely goes to the weight and credibility of the test results. *c.f. Turpin v. State,* 606 S.W.2d 907 (Tex.Cr.App.1980). Appellant's second ground of error is overruled.

■ In a related ground, appellant alleges error in the trial court's failure to grant a motion for continuance to allow investigation and testing of hair samples. Again, appellant's counsel has failed to apprise this Court of the location in the record of the supposed error. There is no record of a written application for continuance on grounds of surprise. Appellant's motion failed to comply with Tex.Code Crim.Pro. Ann. arts. 29.03, 29.08 and 29.13. The motion was not in writing and not sworn to by the defendant. Our reading of the record

fails to disclose any showing that the evidence sought by the defense was in fact available. The trial court did not abuse its discretion in denying appellant's oral motion for continuance made after trial began. See *Rosales v. State,* 473 S.W.2d 474 (Tex. Cr.App.1971). Ground of error number three is overruled.

■ Another ground of error in appellant's brief reads:

"The Court erred in allowing evidence of a ski mask, (State Exhibit 20), to be admitted without the proper chain of custody being proven."

From the argument under this point, we gather that appellant's complaint is not of a defect in the identification of the mask, which the record clearly shows was proper. See *Hammett v. State,* 578 S.W.2d 699 (Tex. Cr.App.1979). Rather, appellant appears to be concerned with the handling of the ski mask only insofar as it may have affected the identification of the "unknown" hairs. In other words, appellant alleges a failure in the chain of custody of the unknown hair sample prior to its receipt by the lab for analysis.

The ski mask, along with the other items found in the field and the overalls found in the bushes, was taken to the Criminal Investigation Division of the Corpus Christi Police Department. These items were stored in a locked metal locker with evidence in other cases. The officer at CID who received the mask testified it was the only "hat" of any kind in his custody during the period. Although CID kept no logs to record the comings and goings of specific items of evidence, the officer in whose care the mask was left testified that no one had access to the locker without his permission; that no one checked out the mask until it was reclaimed by the investigating officers; and that security in his department was tight. From the Criminal Investigation Division, the mask was hand-delivered to the local Department of Public Safety crime lab by two officers who testified to their custody. The DPS lab supervisor testified to the discovery, presentation and testing of the hairs from the mask by himself and his

staff. The record reflects that the known hairs from appellant were sealed in an envelope by the officer who took them and delivered to the officers who delivered them to DPS. The envelope was opened by a DPS chemist who recorded the event. From DPS, the hair samples traveled, chain of custody unbroken, to Dr. Randall for neutron activation analysis.

Although the mask was stored in the same locker with other items of evidence in the case, there is no showing of contamination. Contrary to appellant's assertions, the record does not reflect that the mask was "commingled" with items taken from appellant's house other than the gun and shoes. It is highly unlikely that hairs of appellant could have migrated from these items to the mask. The suggestion of such a doubtful event may affect the weight of expert testimony of the hair comparison, but not its admissibility. There is no showing of tampering. We hold the chain of custody of both the mask and the hair sample was sufficiently proven to support the experts' testimony. See *Noah v. State,* 495 S.W.2d 260 (Tex.Cr.App.1973); *Mitchell v. State,* 488 S.W.2d 786 (Tex.Cr.App.1973); *Walker v. State,* 470 S.W.2d 669 (Tex.Cr.App.1971). Appellant's eighth ground of error is overruled.

■ Next, the appellant claims the trial court erred in admitting into evidence a firearm which appellant contends was illegally seized from appellant's home. Specifically, appellant complains that the warrant under which the search and subsequent seizure were conducted was too general in its description of the weapon to be seized.

The warrant in question described the weapon as "one blue steel automatic pistol of a caliber greater than .25 but less than .45." This description was specific enough to protect appellant's right against unreasonable search. See *Quigg v. Estelle,* 492 F.2d 343 (9th Cir.1974). The fact that appellant possessed more than one weapon answering the description in the warrant did not render the warrant unconstitutionally general. Ground of error number five is overruled.

■ Appellant complains that several items of tangible evidence, seized from appellant's residence but outside the scope of the search warrant, were improperly admitted into evidence. The items complained of include a pair of overalls, an RCA scanning monitor manual, hair from a hairbrush and a pair of brown boots. The first three items on this list were not admitted into evidence. Of these, there can be no complaint. The boots were covered by the search warrant, which specified "one pair of light brown, square-toed leather shoes." Ground of error number six is overruled.

Finally, appellant contends the trial court committed error "in allowing the State witness, Jessie Vera (sic), to change his testimony identifying the defendant, as permitting over defense objection, the State to bolster, lead and impeach his testimony." In the sequence of testimony complained of, the witness Viera, the assistant manager of the robbed store, identified the appellant before the jury as the man he had identified as the robber at a police line-up shortly after the robbery. Then Viera proceeded to answer negatively when asked if he recognized as present in the courtroom the man who robbed him. The prosecutor rephrased his question, and a defense objection grounded on "leading and bolstering" was sustained. Again the question was rephrased, and again defense counsel objected. This time the witness was allowed to answer and, after he expressed some confusion, he positively identified the appellant as the man he picked out of the line-up *and* the man who robbed him.

■ Bolstering occurs when a party is allowed to introduce prior consistent statements of an unimpeached witness to enhance the witness' credibility. This did not occur in this case. Impeachment is the introduction of prior inconsistent statements or evidence of bad character for truth and veracity in order to discredit a witness. That is not our situation, either.

■ We agree that counsel for the State may have been allowed to lead the witness. That is a matter of discretion for the trial

court. From the record, it appears that the witness was confused. During this testimony, there were several objections by the defense counsel. There were arguments from both sides and instructions from the bench. That the witness changed his testimony after the question was rephrased goes to its weight and not its admissibility.

We have considered all of appellant's grounds of error, and they are overruled.

The judgment of the trial court is affirmed.