**Eduardo SERVIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–86–102–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 2, 1987.

---

1. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

Diane M. Palmer, Missouri City, for appellant.

John B. Holmes, Jr., Cathleen C. Herasimchuk, Charles A. Noll, Houston, for appellee.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction for burglary of a habitation. Appellant pled not guilty, was found guilty as charged by a jury and his punishment was assessed at twenty-five years confinement in the Texas Department of Corrections. We affirm.

Appellant asserts five points of error. In point of error one, Appellant contends that the sentence of twenty-five years in the Texas Department of Corrections is cruel and unusual punishment under Article I, § 13 of the Texas Constitution and the Eighth Amendment to the United States Constitution. Appellant argues that since he committed no act of violence toward the complainant or his wife and has no prior convictions, the sentence was cruel and unusual. We disagree. Where the punishment assessed by the court or jury is within the statutorily prescribed limits, the punishment is not cruel and unusual within the constitutional prohibitions. *McNew v. State,* 608 S.W.2d 166,

174 (Tex.Crim.App.1980); *Samuel v. State*, 477 S.W.2d 611, 614 (Tex.Crim.App.1972); *Young v. State*, 644 S.W.2d 18, 22 (Tex. App.—Houston [14th Dist.] 1982, pet. ref'd). The punishment assessed by the jury was within the range authorized by Section 12.32(a) of the Texas Penal Code (Vernon Supp.1987). Appellant's first point of error is overruled.

█ In point of error two, Appellant contends that the evidence was insufficient to support his conviction for burglary. The record shows that on August 10, 1985, the 76 year old complainant and his wife retired for the night after checking to see that all the doors and windows of their home were closed and locked. The complainant's wife was awakened at approximately 2:30 a.m. by a male intruder who touched her as she lay sleeping. This intruder was dressed in a red shirt and light colored pants. The man crawled toward the bedroom door and then stood up. The complainant then awakened, grabbed a revolver and fired a shot as the intruder ran down the hall and escaped through a window. Neither the complainant nor his wife was able to see the man's face clearly although they could discern his size and silhouette. The police were called and they made a report of the incident.

Shortly after the police left, the complainant's wife discovered another intruder hiding in another bedroom. She screamed and the man grabbed her, held a knife to her breast and yelled at complainant: "Stop or I'll kill her." The complainant charged the man, grabbed his wrist and shot him. The man retaliated by stabbing the wife in the head and back. The complainant then shot him several more times.

Thinking that the intruder was subdued, the complainant again called the police. While complainant was on the phone with the police, the man revived and attacked him. The intruder took the gun from the complainant and beat him on the head with it. Then he put the gun to the complainant's forehead and pulled the trigger, saying, "Bastard, I'll kill you." The gun failed to fire and they continued to struggle. The complainant was knocked unconscious by the blows to his head. Later, he regained consciousness, remembered that he had another gun, obtained it and shot the man again as he escaped through a window.

Both complainant and his wife required medical assistance and called their neighbor who offered to take them to the hospital. As they were backing out of the driveway, a man walked past the car and was illuminated by the car lights. The man wore a red shirt and light pants. The complainant's wife screamed and told her husband and neighbor that she recognized him as the person who they first found in the house. At trial, she testified that she identified the person who passed the car as the first intruder from his red shirt, slacks and from his build and hair. She stated that she had no doubt that he was the same person who had been in her bedroom earlier. Both the wife and the neighbor identified Appellant as the man they saw behind the car and testified they saw his face clearly as he walked past the car.

The police recovered several fingerprints from the inside of a window pane removed by the intruders from the back porch door of the complainant's home. One of these fingerprints matched Appellant's middle right finger. The police also discovered the co-defendant, Alicio Franco, wounded, and lying in some bushes. Mr. Franco testified that he and Appellant lived in an apartment less than 100 feet from the complainant's back door and that they broke into the complainant's home to steal money to pay their rent. He testified that Appellant suggested and planned the burglary.

Appellant argues that there is no evidence that Appellant entered the complainant's house on August 11, 1985. He asserts that there is no way to determine when his fingerprint was left and that there were no witnesses who could positively identify Appellant as the intruder in the complainant's house. In addition, Appellant asserts that even if Appellant was present at the time of the burglary, there was "no real evidence" that he encouraged, solicited, aided or abetted Mr. Alicio Franco in committing the burglary. We find these contentions to be without merit.

The standard for reviewing the sufficiency of the evidence on appeal is to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Taylor v. State*, 684 S.W.2d 682, 684 (Tex.Crim.App.1984); *Washington v. State*, 721 S.W.2d 502, 503 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd). The facts which support the conviction must exclude all other *reasonable* hypotheses except the defendant's guilt. *Washington v. State*, 721 S.W.2d at 503; *Mejia v. State*, 689 S.W.2d 485, 487 (Tex. App.—Houston [14th Dist.] 1985, pet. ref'd). The evidence need not exclude every *conceivable* hypothesis that someone other than the accused committed the offense. *Washington v. State*, 721 S.W.2d at 503; *See Garcia v. State*, 683 S.W.2d 715, 718 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd).

█ It is well established that fingerprints alone are sufficient to sustain a finding of guilt if the evidence shows that the fingerprints must necessarily have been left on the object at the time of the offense. *Nelson v. State*, 505 S.W.2d 271, 273 (Tex. Crim.App.1974); *Washington v. State*, 721 S.W.2d at 503; *Anderson v. State*, 672 S.W.2d 14, 15–16 (Tex.App.—Houston [14th Dist.] 1984, no pet.). One of the most important factors to be considered in determining the sufficiency of fingerprint evidence is the extent to which the object upon which the fingerprints were discovered was accessible to the accused. *Phelps v. State*, 594 S.W.2d 434, 436 (Tex.Crim. App.1980).

The complainant testified that the window upon which the fingerprint was found was not broken when he checked the door immediately before going to bed that night. This evidence alone has been held sufficient to support a finding of guilt. *See Washington v. State*, 721 S.W.2d at 503; *Anderson v. State*, 672 S.W.2d at 16. Appellant was picked out of a photographic spread shortly after the offense occurred. Further, the co-defendant testified that Appellant planned the burglary, removed the pane of glass and entered the house. We hold that the evidence clearly excluded every reasonable hypothesis other than Appellant's guilt and was sufficient to support Appellant's conviction for burglary. Point of error two is overruled.

In point of error three, Appellant contends that the trial court erred in failing to grant a mistrial due to two instances of improper jury argument during the punishment phase of the trial. The first argument that Appellant contends was improper refers to Appellant and his co-defendant as illegal aliens. Appellant contends that the State's sole purpose in making the argument was to inflame and prejudice the jury.

█ The record reflects that the prosecutor was referring to Mr. Franco's "support group" when he made the complained of comment. The evidence at the punishment phase established that Mr. Franco and other persons were in the country illegally. The record does not reveal that there was similar evidence in the record with regard to Appellant. However, even if the jury interpreted the statement as referring to Appellant, we do not find the statement to be of such a nature as to require reversal. The trial court sustained the objection made by the co-defendant's attorney and instructed the jury to disregard the comment. Generally, any injury from improper jury argument is cured when the court instructs the jury to disregard, unless the remark is so inflammatory that its prejudicial effect cannot be removed by such an instruction. *McKay v. State*, 707 S.W.2d 23, 37 (Tex.Crim.App.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Logan v. State*, 698 S.W.2d 680, 682 (Tex.Crim.App.1985). We find that the trial court's instruction was sufficient to cure any harm resulting to Appellant from the statement.

█ The second instance of alleged improper argument occurred when the prosecutor argued that the pane of glass through which they entered the house was so small they must have "practice[d] at it a whole lot." The co-defendant's attorney again objected and the trial court sustained

the objection and instructed the jury to disregard the comment. Even if the argument was improper, the trial court's instruction to disregard was sufficient to cure any error. *McKay v. State,* 707 S.W.2d at 37; *Logan v. State,* 698 S.W.2d at 682; *Angel v. State,* 694 S.W.2d 164, 173 (Tex.App.—Houston [14th Dist.] 1985, pet. granted). In light of the record as a whole, the prosecutor's statements could not have harmed Appellant. We hold that the trial court did not err in denying the motions for mistrial. Point of error three is overruled.

■ In point of error four, Appellant asserts that the trial court erred in denying Appellant's motion for mistrial due to a violation of his Motion in Limine.

Prior to trial, the court granted Appellant's Motion in Limine and required the State to instruct its witnesses not to mention the fact that there had been previous burglaries at the complainant's home. However, this information was brought out twice during the trial. The first instance occurred during the State's opening statement when the prosecutor commented, "The evidence will show you that Mr. and Mrs. Foster had not led a protected life, that this is not the first time that this home had been burglarized, and as a result of previous—." Defense counsel objected and the trial court instructed the jury to disregard and denied the motion for mistrial.

The second instance occurred during direct examination of the complainant:

Q: Let me back up just a little bit, Mr. Foster. Did you have anything in the bed with you and your wife that evening?

A: Yes, sir, we had had previous break-ins and I ___

Defense counsel again objected and received an instruction to disregard this answer. The trial court again denied the motion for mistrial.

An instruction to disregard the improper testimony cures any error except in extreme cases where it appears the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds.

*Franklin v. State,* 693 S.W.2d 420, 428 (Tex.Crim.App.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986); *Carrillo v. State,* 591 S.W.2d 876, 892 (Tex. Crim.App.1979); *See Short v. State,* 658 S.W.2d 250, 256 (Tex.App.—Houston [1st Dist.] 1983), *affirmed,* 671 S.W.2d 888 (Tex. Crim.App.1984). Here, it appears that the comment during the State's opening statement was directed toward the fact that the complainant slept with a gun in his bed. This fact was brought out later during the trial. Although the comment was a violation of the court's order, there was no implication that Appellant was involved in these prior burglaries. Appellant has failed to show any harm resulting from the comment.

The second instance was not an intentional violation of the prior order of the court. The State was attempting to elicit testimony that the complainant used a gun that he kept in his bed. The answer regarding "previous break-ins" was totally non-responsive to the question. Error, if any, was rendered harmless by the trial court's action in sustaining the objection and instructing the jury to disregard. Point of error four is overruled.

■ In his final point of error, Appellant asserts that reversible error occurred when the State elicited testimony showing an extraneous offense. The record reflects that one of the officers investigating the burglary testified as follows:

Q: Were you involved in any further investigation in identifying anyone else that might have been involved?

A: Approximately at 4:00 a suspect threw a bottle through a window at 2909 Drexel.

Defense counsel for Appellant objected that this was testimony of an extraneous offense and was irrelevant. The court sustained the objection and instructed the jury to disregard. Appellant's motion for mistrial was denied. The officer later testified that he "heard glass breaking next door" and went to investigate. The trial court at this time overruled Appellant's objection. Appellant asserts that this testimony was

calculated to prejudice the jury's mind against him. We hold that the testimony that "someone" threw a bottle through a window of the house next door to the complainant's does not constitute testimony regarding an extraneous offense committed by Appellant. There was no testimony that Appellant was involved in the incident. Point of error five is overruled.

Accordingly, the judgment of the trial court is affirmed.