**Eddie WILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–88–00357–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 23, 1989.

Steven R. Rosen, Houston, for appellant.

Linda A. West, Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction for the offense of murder. A jury found Appellant guilty and that a deadly weapon was used in the commission of the offense. They assessed his punishment, enhanced by two prior felony convictions, at confinement for life in the Texas Department of Corrections. We affirm.

Appellant asserts four points of error on appeal. In his first point of error, Appellant contends that evidence at trial justified a charge on voluntary manslaughter, and the trial court erred in refusing to include Appellant's requested charge on voluntary manslaughter in its jury charge.

The record reflects that on November 19, 1987, at approximately 9:00 p.m. Appellant arrived at the home of his sister, Mrs. Rosie Cox. Mrs. Cox was on the telephone when Appellant stuck his head in the door. Appellant went back outside, fired a shot and then entered the house carrying a .22 rifle. Mrs. Cox's husband ran toward the back door, but Appellant called for him to come back. Appellant said he "wanted to use the m____ f____ phone" at which point Mrs. Cox hung up the phone. Appellant "raised the rifle up" and told Mrs. Cox to call their oldest brother, Willie Harris, who lived a few houses away, to see if he was home. The deceased, Michael Landow, answered and told Mrs. Cox that Willie was not there. She informed Appellant and he then pointed the rifle at Mr. and Mrs. Cox and told them, "You are going with me." When they refused, Appellant told his sister to "stay out of [his] m____ f____ business," pulled the telephone out of the wall and left the house. Mrs. Cox stepped out on the porch and saw Appellant with the rifle walking down the sidewalk toward Willie's house. She stated that Appellant seemed angry and his eyes were "red, red, red like fire." She stated that "he acted like something was wrong with him. He wasn't the Eddie that I had been brought

up with." She further testified that she believed he was on drugs.

Mrs. Cox ran across the street to a neighbor's house and called the police. She then phoned Willie's house but there was no answer. Appellant returned a short time later, walked over to the neighbor's house and called Mrs. Cox to come outside. She refused and the neighbor ordered Appellant to leave. When the police arrived, Mrs. Cox told them of the prior events and suggested they go to Willie's house.

Officer Vance, the first officer at the scene, stated that Willie Harris' house was approximately 100 feet from the neighbor's house from which Mrs. Cox called the police and that it took less than one minute to walk that distance. Officer Vance and Officer Vashaw went to Willie Harris' house, opened the front door, and discovered the deceased laying on the living room floor. Eleven spent .22 calibre rifle cartridges and two bullets were found at the scene. Sgt. Gafford, an H.P.D. homicide detective, arrived at Mr. Harris' house at 11:20 p.m. At 11:45 p.m., Appellant telephoned that location and told Sgt. Gafford that he had been awakened by a telephone call from a friend who told him about the murder and that Appellant had been accused of the offense. Appellant told Sgt. Gafford he had been at home asleep all evening and knew nothing of the incident.

At Appellant's invitation, the officers went to Appellant's house and obtained his consent to a search of the premises. Just inside the front door they found a leather jacket. Tests conducted at the H.P.D. crime lab revealed that there were five spots of human blood on the jacket and that these blood spots had "flight characteristics" indicating that the blood "flew through the air and landed on the coat." An autopsy of the deceased showed that six bullets had been fired into the deceased's back, four of which perforated his lungs and caused his death. In addition, the deceased sustained gunshot wounds to the right buttock, left front chest, and right forearm. A total of six bullets were recovered from the body.

■ Appellant maintains there is evidence that Appellant acted under the influence of sudden passion. He contends the testimony of Mr. Willie Harris and Mrs. Cox was sufficient to raise the issue. However, Mr. Harris testified that Appellant was bothered by the deceased's accusation that Appellant stole his dog, that Appellant believed the deceased had stolen his dress suits and that Appellant was seeing his girlfriend. Also, Mrs. Cox testified that Appellant had an argument with the deceased regarding the dog a number of days prior to the killing, and at that time the deceased told Appellant he would shoot him. Appellant then responded by swearing on his mother's grave to kill the deceased. This is evidence of prior bad blood between the parties and premeditation rather than *sudden* passion.

Tex.Penal Code Ann. § 19.04 (Vernon 1974) reads in pertinent part as follows:

(a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

(b) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

(c) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

■ Unless there is some evidence of sudden passion in the case, voluntary manslaughter cannot be considered a lesser included offense of murder. *Bradley v. State*, 688 S.W.2d 847, 851 (Tex.Crim.App. 1985); *Stahl v. State*, 712 S.W.2d 783, 788 (Tex.App.—Houston [1st Dist.] 1986), *affirmed*, 749 S.W.2d 826 (1988). A charge on voluntary manslaughter is appropriate only when there is evidence that the ac-

cused acted under the "immediate influence of sudden passion arising from adequate cause." *Marquez v. State,* 725 S.W.2d 217, 223–24 (Tex.Crim.App.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). The "sudden passion" must be "directly caused by and arising out of provocation" by the deceased "at the time of the offense". *Hobson v. State,* 644 S.W.2d 473, 478 (Tex.Crim.App.1983). Passion which is solely the result of former provocation is not sufficient to raise the issue of voluntary manslaughter. *Lawrence v. State,* 700 S.W.2d 208, 210 (Tex.Crim.App. 1985); *Hobson v. State,* 644 S.W.2d at 478. Former provocation along with a showing of a sufficiently agitated state of mind at the time of the killing may raise the issue. *Lawrence v. State,* 700 S.W.2d at 211. However, it is not sufficient simply to show that the accused acted mad and had "red eyes". The evidence must also show that the anger was the result of an act of provocation on the part of the deceased. *Marquez v. State,* 725 S.W.2d at 224.

There is no evidence that the killing was the result of an act of provocation on the part of the deceased. The deceased was apparently at home alone prior to the killing. There is no evidence that Appellant and the deceased had *any* contact immediately prior to the shooting. In the absence of such evidence, the offense of voluntary manslaughter simply is not raised. Point of error one is overruled.

In his second point of error, Appellant asserts the evidence was insufficient to prove that he was the person who committed the offense.

The standard for reviewing the sufficiency of the evidence in both direct and circumstantial evidence cases is whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Taylor v. State,* 684 S.W.2d 682, 684 (Tex.Crim.App.1984); *Servin v. State,* 745 S.W.2d 40, 43 (Tex.App.—Houston [14th Dist.] 1987, no pet.); *Washington v. State,* 721 S.W.2d 502, 503 (Tex.App.— Houston [14th Dist.] 1986, pet ref'd). The

facts which support the conviction must exclude all other *reasonable* hypotheses except the defendant's guilt. *Servin v. State,* 745 S.W.2d at 43; *Washington v. State,* 721 S.W.2d at 503. The evidence need not exclude every *conceivable* hypothesis that someone other than the defendant committed the offense. *Washington v. State,* 721 S.W.2d at 503.

The evidence showed that on the night the offense was committed, Appellant arrived at his sister's house at approximately 9:00 p.m. Appellant ordered Mrs. Cox to telephone their brother, Willie Harris, who lived a few houses away to see if he was home. The deceased answered the phone and informed her that Willie was not at home. Upon learning this, Appellant, armed with a .22 rifle, pulled the telephone out of the wall, left the house and walked down the sidewalk in the direction of Willie Harris and the deceased's home. Mrs. Cox ran across the street to a neighbor's home to call the police and then called Harris' home again and this time there was no answer. Appellant returned shortly thereafter. When the police arrived at 10:20 p.m., they discovered the deceased's body on the living room floor of Harris' home. The autopsy revealed six .22 calibre bullets in the deceased's body. While the police were still at the scene, Appellant telephoned and told them a story which completely contradicted Mrs. Cox's statement.

We hold that, viewing the evidence in the light most favorable to the verdict, the evidence was sufficient to support the conviction. Point of error two is overruled.

In his third point of error, Appellant contends the trial court improperly refused to admit testimony of a threat made by the deceased against Mrs. Cox's husband. Appellant maintains this testimony was admissible under TEX.PENAL CODE ANN. § 19.06 to show the condition of Appellant's mind at the time of the offense.

Defense counsel made a Bill of Exception during which Mrs. Cox testified that one day when she and her husband were having an argument, the deceased came over to talk to Mr. Cox. Mr. Cox told him to mind his own business and the de-

ceased replied, "[M]an, if I come back around here I going to bring my .38".

The determination of whether evidence is relevant to any issue in the case lies within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *Johnson v. State*, 698 S.W. 2d 154, 160 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). In a homicide case, the general reputation of the deceased as a violent and dangerous person and specific acts of violent misconduct on his part are admissible, but only if this violent reputation or prior acts were known to Appellant prior to the offense. *Medina v. State*, 639 S.W.2d 947, 948 (Tex.Crim.App.1982). There was no evidence that Appellant was present when the deceased made that threat or that he was ever subsequently made aware of the threat. Therefore, evidence of the threat made by the deceased to a third person was irrelevant. The trial court did not abuse its discretion in excluding this testimony. Point of error three is overruled.

■ In his final point of error, Appellant asserts the trial court erred in admitting Appellant's leather jacket into evidence. Appellant consented to a search of his home by police on the night of the offense. The police seized Appellant's leather jacket because it fit the description of the jacket Appellant was wearing immediately prior to the murder, and because it had dried blood on it.

Appellant's contentions under this point of error are directed at the trial court's refusal to grant a continuance to give defense counsel an opportunity to examine the jacket. Appellant contends he filed a pretrial discovery motion regarding materials, objects, documents or physical evidence the State intended to use at trial. Several times prior to trial he asked the prosecutor whether the jacket had been examined and was told that it had not been examined. On the first day of trial, Appellant was informed the State was going to examine the jacket. Appellant requested time to examine the jacket. The jacket was offered into evidence by the State and the H.P.D. chemist who conducted tests on the jacket testified that he discovered human blood on it. Appellant then asked for a continuance so that he could have the jacket examined. This request was denied by the court.

Tex.Code Crim.Proc.Ann. art. 29.13 (Vernon 1966) provides for a continuance after the trial has begun as follows:

A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some *unexpected occurrence* since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by *surprise* that a fair trial cannot be had. (Emphasis added.)

The granting of a motion for continuance is a matter within the trial court's discretion and its ruling will not be disturbed absent an abuse of discretion. *Rollins v. State*, 488 S.W.2d 429, 430 (Tex.Crim.App.1973); *Lopez v. State*, 643 S.W.2d 431, 434 (Tex. App.—Corpus Christi 1982, no pet.). We find no evidence in the record that the trial court ever ruled on the Motion for Discovery. Further, we find no evidence in the record that Appellant ever requested the opportunity to examine the jacket prior to trial. The record reflects that Appellant's counsel was appointed to represent Appellant five months prior to trial and he was always aware of the fact that the State believed the stains on the jacket were human blood. Appellant could have requested an opportunity to examine the jacket at any time prior to trial. We find no unexpected occurrence or surprise to Appellant which would warrant a continuance after the trial had begun. The trial court did not abuse its discretion. Point of error four is overruled.

Accordingly, the judgment of the trial court is affirmed.