PD-1657-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/21/2015 10:44:24 PM
Accepted 1/28/2015 9:49:43 AM
ABEL ACOSTA
CLERK

# TO THE COURT OF CRIMINAL APPEALS OF TEXAS

## PD-1657-14

--------------------------------

**VALDEMAR BAUTISTA,**
*Appellant*
v.
**THE STATE OF TEXAS,**
*Appellee*

--------------------------------

# PETITION FOR DISCRETIONARY REVIEW

--------------------------------

On Petition for Discretionary Review from the Court of Appeals for the Fourteenth District, Houston, Texas in Cause No. 14-13-00457-CR, Affirming the Conviction in Cause No. 11-05-13821-CR from the 506th District Court of Waller County, Texas.

--------------------------------

FILED IN
COURT OF CRIMINAL APPEALS

January 28, 2015

ABEL ACOSTA, CLERK

**R. Scott Shearer**
TBA No. 00786464
929 Preston, Suite 200
Houston, Texas 77002
(713) 254-5629
(713) 224-2889 FAX
*ShearerLegal@Yahoo.com*

**Attorney for Appellant**
**(Pro Bono)**

January 21, 2015

1

# SUBJECT INDEX

**Page**

List of Authorities................................................................... iv

Names of All Parties................................................................ v

Statement Regarding Oral Argument.................................................. vi

Statement of the Case............................................................. 2

Statement of the Procedural History of the Case.................................... 3

Ground for Review Number One...................................................... 10

**GROUND FOR REVIEW NUMBER ONE**: The court of appeals erred by applying an incorrect standard of review to Appellant's point of error regarding the denial of his motion for continuance.

(Op. at 12)

Statement of Facts................................................................ 11

Argument and Authorities......................................................... 18

Ground for Review Number Two..................................................... 22

**GROUND FOR REVIEW NUMBER TWO:** The court of appeals erred by applying an incorrect standard of review. The court of appeals failed to apply an appropriately deferential standard of review to Appellant's motion for new trial raising new recantation evidence.

(Op. at 27)

Reasons for Review............................................................... 22

Argument and Authorities.................................................................. 22

Prayer for Relief............................................................................ 26

Certificate of Service...................................................................... 27

Certificate of Compliance................................................................ 28

APPENDIX -    Copy of the opinion rendered by the court of appeals… 29

# LIST OF AUTHORITIES

**Page**

**CASES**

*Gonzales v. State*, 304 S.W.3d 838 (Tex. Cr. App. 2010)...........................................4

*Keeter v. State*, 74 S.W.3d 31 (Tex. Cr. App. 2002) ................................................16

*Williams v. State*, 375 S.W.2d 449 (Tex. Cr. App. 1964)................................. 16, 17

**STATUTES**

TEX. CRIM. PROC. CODE ANN. art. 29.03..................................................................4

TEX. CRIM. PROC. CODE ANN. art. 29.13..................................................................4

TEX. CRIM. PROC. CODE ANN. art. 40.001......................................................... 16, 18

TEX. PENAL CODE §21.02.........................................................................................2

**RULES**

TEX. R. APP. PROC. 38.1(a)........................................................................................v

# NAMES OF ALL PARTIES

In accordance with TEX. R. APP. PROC. 38.1(a), Appellant submits that the following are interested parties:

**R. Scott Shearer -**        Attorney for Appellant (Pro Bono).

929 Preston, Suite 200
Houston, TX 77002

**Ellis Munoz** -        Trial counsel for Appellant.

431 Silverdale
Conroe, TX 77301

**Valdemar Bautista** -        Appellant.

TDCJ# 01840208
2665 Prison Road #1
Lovelady, TX 75851

**Laurie Sellers** -        Trial counsel for the State of Texas.

Waller Co. District Attorney's Office
645 12th Street
Hempstead, Texas 77445

**Elton Raymond Mathis** -        Appellate counsel for the State of Texas.

Waller Co. District Attorney's Office
645 12th Street
Hempstead, Texas 77445

**Hon. Albert M. McCaig, Jr.** -        Presiding judge of the Trial Court.

506th District Court
836 Austin Street, Suite 307
Hempstead, Texas 77445

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes oral argument will be helpful.  Appellant requests oral argument.

# TO THE COURT OF CRIMINAL APPEALS OF TEXAS

## PD-1657-14

---

**VALDEMAR BAUTISTA,**
*Appellant*
v.
**THE STATE OF TEXAS,**
*Appellee*

---

# PETITION FOR DISCRETIONARY REVIEW

---

On Petition for Discretionary Review from the Court of Appeals for the Fourteenth District, Houston, Texas in Cause No. 14-13-00457-CR, Affirming the Conviction in Cause No. 11-05-13821-CR from the 506th District Court of Waller County, Texas.

---

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

**APPELLANT, VALDEMAR BAUTISTA**, by and through his counsel on appeal, files this Petition for Discretionary Review. In support of his request for review, Appellant would respectfully show the Court the following:

## STATEMENT OF THE CASE

Appellant was charged in the 506th District Court of Waller County, Texas in cause number 11-05-13821 with the offense of continuous sexual abuse. See TEX. PENAL CODE §21.02. (CR at 2). Appellant pleaded not guilty and proceeded to a bench trial. (RR III at 5). Appellant was found guilty by the trial court. (RR XVIII at 64). On February 22, 2013, the court assessed punishment at 40 years in the Texas Department of Criminal Justice – institutional Division. (CR at 183)(RR XVIII at 65-66). Appellant filed a motion for new trial, which was overruled after a hearing. (CR at 232)(RR III at 5). The Appellant gave timely notice of appeal. (CR at 233).

_____

\*     The record on petition for discretionary review
     is cited as follows:

CR at *p*   ..........Clerk's record at page *p*.

RR *V* at *p*   ..........Reporter's record volume *V* at page *p*.

Op. at *p*   ..........Opinion at page *p*.

# STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

In a PUBLISHED opinion delivered November 20, 2014, a panel of the Fourteenth Court of Appeals AFFIRMED Appellant's conviction for continuous sexual abuse of a child. The Appellant did not file a motion for rehearing. The Appellant's Petition for Discretionary Review was due on December 20, 2014. Appellant filed a Motion for Extension of Time to File Petition for Discretionary Review, which was granted. Appellant's Petition for Discretionary Review is due January 21, 2015.

# GROUNDS FOR REVIEW

**GROUND FOR REVIEW NUMBER ONE**: The court of appeals erred by applying an incorrect standard of review to Appellant's point of error regarding the denial of his motion for continuance.

(Op. at 12)

**Reasons for Review:**

1.     The panel decision of the Fourteenth Court of Appeals requires review because the court decided an important question of state law that that is in conflict with the applicable decisions of this Court on the same matter.  The decision of the Fourteenth Court of Appeals is in conflict with this Court's holding in *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Cr. App. 2010).

2.     The panel decision of the Fourteenth Court of Appeals requires review because the court decided an important question of state law that that is in conflict with another decision of a Court of Appeals on the same matter.  The panel decision of the Fourteenth Court of Appeals is in conflict with the Corpus Christi court of appeals decision in *Tanguma v. State*, 47 S.W.3d 663, 680 (Tex. App. - Corpus Christi 2001, pet. ref'd).

3.     The panel decision of the Fourteenth Court of Appeals requires review because the court has misconstrued a state statute.  The court misconstrued TEX. CRIM. PROC. CODE ANN. articles 29.03 and 29.13.

4.     The panel decision of the Court of Appeals requires review because the court of appeals has decided an important question of state law, which has not been, but should be settled by this Court.

**Statement of facts:**

On May 31, 2011, Appellant Valdemar Bautista was charged with continuous sexual abuse of a child in cause number 11-05-13821. Appellant was alleged to have engaged in sexual contact with his daughter Nereyda[1] Bautista over an extended period. (CR at 2).

Appellant is a devoted Christian and does not smoke or drink alcohol. (RR XV at 90-91). Appellant worked seven days a week. (RR XVII at 93). He worked long hours. (RR XV at 52). Appellant was a good provider for the family. (RR XVIII at 6). Appellant built his own house for his family. (RR XV at 39)(RR XVII at 94). The family would host prayer meetings at their house on Wednesdays (RR XV at 41) and attend church on Fridays. (RR XVII at 186). Appellant has never before been convicted of a felony and was eligible for probation. (CR at 148).

Appellant was very strict with his children when it came to their upbringing. (RR XV at 42-43)(RR XVII at 94, 184). Appellant employed corporal punishment. (RR XV at 83)(RR XVII at 124). Appellant required his children to attend church (RR XV at 43) and to do chores after school. (RR XV at 43, 75, 86). Appellant also required his daughters to wear school clothing based upon his interpretation of bible scripture. (RR XV at 47). Appellant's daughters were not

permitted to wear pants, makeup, or jewelry and they were not allowed to cut their hair. (RR XV at 46). Appellant's daughters suffered ridicule from their classmates as a result of their clothing and appearance. (RR XV at 47). To escape the ridicule, Appellant's daughters would switch clothes after they left Appellant's house. (RR XV at 48)(RR XVII at 48). They would change clothes on the bus. (RR XVII at 196). Elisa and Nereyda Bautista had learning disabilities (RR XV at 45) and disciplinary problems at school. (RRXV at 41).

On December 10, 2010, Appellant's daughters Elisa and Nereyda Bautista were at school. (RR XV at 95)(RR XVII at 47). Elisa is two years older than Nereyda. (RR XVII at 58). They share a bedroom at home. (RR XV at 20). Their father came to the school that day. (RR XV at 95). Nereyda had never seen him at the school before. (RR XV at 96). Appellant came to the school to check and see what kind of clothing his daughters were wearing. (RR XV at 50)(RR XVI at 82). Appellant had been to the school three or four times for the same purpose and, on previous occasions, was able to observe his daughters without them seeing him. (RR XVI at 82).

On this occasion, however, Elisa Bautista saw her dad at the school. (RR XVII at 49). She knew she was in trouble because he saw her wearing pants. (RR XVII at 49). The other girls in class saw that she was afraid to go home. (RR

---

[1] Nereyda also goes by the name of "Lucy". (RR XV at 23)(RR XIX at 10).

XVII at 49)(RR XVII at 122). One of the other kids in school told Elisa Bautista to tell school officials that her father sexually assaulted her. (RR XVII at 51). Elisa did not know what the words meant, but she was so frightened to go home that she said them anyway. (RR XVII at 51). Elisa was interviewed by the school principal, Bennie Mayes. (RR XVII at 53). Elisa told principal Mayes that she was scared to go home. (RR XVII at 123). Elisa told the principal things about her father that she made up. (RR XVII at 54). Elisa told the principal that her father touched her breasts and private area. (RR XVII at 124). Elisa went to her sister's class with the principal. (RR XVII at 52, 131-132). Elisa told Nereyda the information she had conveyed to the principal and told her sister to say the same thing. (RR XVII at 52, 63, 131-132). Elisa spoke under pressure. (RR XVII at 63). She just wanted to get out of the room. (RR XVII at 63). Elisa's and Nereyda's allegations led to a subsequent referral from the principal to Children's Protective Services and the instant criminal complaint. (RR XVII at 126).

After being taken into CPS custody, both Elisa and Nereyda received forensic medical exams. (RR XVIII at 19)(RR XIX at 38). The results were never disclosed. (RR XIX at 19, 22, 30).

Nereyda recanted her initial allegations before trial commenced and stated in writing that her accusations were untrue. (CR at 131). Both Elisa and Nereyda gave videotaped interviews recanting their stories and denying the allegations

13

against their father, the Appellant. (RR XVII at 83). Elisa Bautista told the district attorney that the allegations were untrue. (RR XVII at 86). Elisa testified that she is a virgin. (RR XVII at 117). Nereyda testified that no one from her family pressured her to recant the allegations. (RR XIX at 15).

Appellant's son, Christian Bautista, did not believe the allegations leveled at his father. According to him, Elisa and Nereyda would always tell lies. (RR XVII at 189). Appellant's oldest daughter Brenda (RR XV at 18) testified that Elisa and Nereyda, "always lied." (RR XVII at 196). Brenda Bautista never observed her father touch Elisa or Nereyda in an inappropriate way. (RR XVII at 194).

A Children's Protective Services [CPS] video was taken on December 13, 2010, three days after the initial outcries were made. (RR XII at 7). A second interview was conducted approximately four months after the first interview. (RR XVI at 133). Elisa Bautista testified that the things she said during her interview were not true. (RR XVII at 71).

Nereyda Bautista testified at the trial. (RR XV at 93). After she was removed from class, Nereyda told a vice principal that her father, the Appellant, touched her inappropriately. (RR XV at 99-100). Nereyda and her sister were placed in a room together. (RR XV at 100). Nereyda claimed her father touched her on her breasts when she was eight or nine years old. (RR XV at 101). She never told her father she didn't want him to touch her. (RR XV at 101). Nereyda

14

said that her father would sometimes sleep in the bed she shared with Elisa. (RR XV at 108, 172). Elisa testified that this was not so. (RR XVII at 92). Nereyda claimed that her father had sex with her. (RR XV at 111). She testified her sister would leave the room when her father came in. (RR XV at 110, 125, 156-157). Nereyda also said that her mom would wake up in the morning and find her father sleeping in her bed, but never said anything. (RR XV at 159). In her initial outcry to principal Mayes (RR XVI at 76) and in her videotaped CPS interviews, Nereyda said that her mother knew of the abuse. (RR XV at 165). At trial, however, she said her mother never knew. (RR XV at 165-167). Nereyda testified that she awoke once to find blood on her sheets. (RR XV at 115, 122). This was at an age before she had her first period. (RR XV at 115, 123). Nereyda said she asked her sister Elisa about the blood on the sheets. (RR XV at 123). Elisa Bautista testified, contrary to Nereyda's own testimony, that her sister Nereyda never mentioned anything about bloody blankets. (RR XVII at 98). Nereyda claimed she hid the sheets in a closet and then threw the sheets away when she got home from school. (RR XV at 115, 122, 163-164). Nereyda also claimed to have observed her father have sex with her sister Elisa. (RR XVI at 136). Elisa denied this in total. (RR XVI at 117). Nereyda testified that her mother was frequently out of the house, either at parties or visiting relatives in Oklahoma. (RR XVI at 137). Elisa Bautista

disputed this. Elisa testified that their mother only went to Oklahoma once a year and never went to parties. (RR XVII at 104).

At trial, Nereyda testified that the video recantation she gave to trial counsel was not true. (RR XV at 127). Nereyda admitted she was not pressured to recant. (RR XV at 134). Nereyda testified that she was given a forensic exam but never received the results. (RR XV at 153-154).

Appellant called Doctor Rogers Saunders as an expert witness. Doctor Saunders is a licensed psychologist in the State of Texas (RR XVIII at 26) and a licensed sex offender treatment provider. (RR XVII at 27). Doctor Saunders has testified in multiple jurisdictions for both the State and the defense. (RR XVII at 27). Doctor Saunders interviewed the Appellant, reviewed psychological reports, and watched the CPS videos of both Elisa and Nereyda. (RR XVII at 30).

Doctor Saunders testified that Nereyda's video testimony was inconsistent (RR XVIII at 54) as well as lacking in emotional content. (RR XVIII at 35). Doctor Saunders noted that Neryeda stated on the video that she had told her sister Elisa about her father's abuse but that Elisa did not confirm this. (RR XVIII at 34). Additionally, Doctor Saunders noted that Neryeda stated that her mother observed the abuse and did nothing. The mother denied seeing any abuse. (RR XVII at 54). In fact, everyone living in the house but Nereyda testified that they never knew of any abuse. (RR XVIII at 54). Doctor Saunders testified that these inconsistencies

16

were atypical for sexual abuse. (RR XVII at 54). Doctor Saunders also found that Nereyda's videotaped interview displayed a lack of emotional congruity, meaning her emotions did not match the allegations themselves. (RR XVIII at 34, 36). Dr. Saunders theorized that the outcry may have been a smokescreen by the children to keep from being disciplined by their father for wearing inappropriate clothing to school. (RR XVIII at 38).

Appellant's wife, Felicitas Bautista, testified that she never saw Appellant touch either of the girls in an inappropriate way. (RR XV at 83, 85, 88). She never observed the Appellant sleep alone with Nereyda. (RR XVIII at 8). Felicitas and the Appellant have been married since 1993. (RR XV at 36). They sleep in the same bed. (RR XV at 87). Nereyda never voiced any complaints to her about her husband (RR XVIII at 5) or his alleged improprieties. (RR XV at 80, 86) Appellant's wife was a stay at home mother. (RR XVIII at 8). Appellant's wife made up the children's beds on a daily basis and never found any bloody blankets or sheets. (RR XVIII at 8, 10). There were no blankets missing. (RR XVIII at 10). Nereyda never accused her husband of sleeping in her bed. (RR XVII at 9). Nereyda and Elisa were very loving and affectionate with their father. (RR XVIII at 14). Appellant's wife never received any results of the sexual assault tests. (RR XVIII at 16).

17

Despite the recantation evidence, the trial court found the Appellant guilty and sentenced him to a maximum term of forty [40] years. (RR XVIII at 64-66). Appellant filed a motion for new trial. (CR at 199). At the hearing on the motion for new trial, Nereyda Bautista was called as a witness and again recanted the allegations she made against her father. (RR XIX at 7-8). Nereyda testified that she feared that if she didn't say what the district attorney wanted her to say at trial, that she would be in trouble and taken from her mother. (RR XIX at 8-10). The district attorney had been calling her repeatedly before trial. (RR XIX at 12). Nereyda apologized for not telling the truth during the trial and repeatedly confirmed that the allegations against her father were untrue. (RR XIX at 15-16). The trial court denied the motion for new trial. (CR at 232)(RR III at 5).

**Argument and Authorities:**

In its opinion of November 20, 2014, Appellant submits the panel fell into error because it did not review the denial of his motion for continuance under the appropriate standard of review.

During the first day of trial, Nereyda Bautista revealed that she underwent a forensic medical exam. (RR XV at 153). Nereyda was examined at a hospital by a female nurse. (RR XV at 154). She did not remember when the exam took place

18

or the results of the exam. (RR XV at 153-154). Before the second day of trial, trial counsel filed a sworn written motion for continuance of the trial based upon the fact that he had not been provided the results of the forensic tests. (CR at 175). The trial court denied the Appellant's motion for continuance, finding that Appellant had suffered no surprise. (RR XVI at 8-9).

The court of appeals agreed with the trial court, holding that Appellant's counsel suffered no surprise because he asked for physician information in a routine discovery motion and because he could have asked the child if she had undergone any medical exams. (Op. at 11). This is an inappropriate standard by which to measure defense counsel's knowledge. *Asking* for an item of evidence and having that item actually *produced* by the State are clearly two different things. As to defense counsel's ability to ask the complainant if she had undergone a medical exam, there is no reason he would have thought to do so given the district attorney's repeated denials of any such exams having occurred. Plainly, Appellant's counsel was blindsided by the revelation at trial.

The State did not make Appellant aware of the results of the forensic medical exams before trial. In fact, district attorney Laurie Sellers informed the trial court that she did not have the results of the exams. (RR XVI at 6). Having so informed the trial court, it must have come as some surprise to her when, at the motion for new trial hearing, an e-mail from CPS was produced showing that the

19

Waller County District Attorney is the very person who requested the exams and the reults were forwarded to her. (CR at 215)(RR XIX 19, 22).

The lack of test results became a crucial issue during the trial. Nereyda testified that she awoke once to find blood on her sheets from being sexually assaulted. (RR XV at 115, 122). This was at an age before she had her first period. (RR XV at 115, 123). Nereyda said she asked her sister Elisa about the blood on the sheets. (RR XV at 123). Elisa Bautista testified, contrary to Nereyda's own testimony, that her sister Nereyda never mentioned anything about bloody blankets. (RR XVII at 98). Nereyda claimed she hid the sheets in a closet and then threw the sheets away when she got home from school. (RR XV at 115, 122, 163-164).

As in all sexual assault exams as well as well woman exams, the doctor or nurse would have noted, as a matter of routine, whether or not the child had an intact hymen. If the results of the exam indicated an intact hymen, then the complaining witnesses' testimony about the bloody sheets and underwear (RR XV at 122) was pure fabrication. She had not yet had her period (RR XV at 115) and she had no problems using the bathroom. (RR XV at 122). The only way blood would have been present is if the hymen was broken as a result of a sexual assault. The trial court's failure to grant a continuance deprived Appellant of crucial exculpatory evidence. The entire case rested on the credibility of the complainant.

If the continuance had been granted, Appellant would have been able to obtain the results of the exams, proving the hymen was intact and the complainant's story was a work of fiction.

A short continuance would not have prejudiced the State or unnecessarily inconvenienced the trial court. By denying the continuance, the trial court effectively thwarted Appellant's entire defense. The trial court's failure to grant the continuance shouldered Appellant with an, "inability to effectively cross-examine the State's witnesses, and inability to adduce crucial testimony from a potential witness." *Tanguma v. State*, 47 S.W.3d 663, 680 (Tex. App. - Corpus Christi 2001, pet. ref'd). Therefore, Appellant suffered "actual prejudice" by the denial of the continuance

**GROUND FOR REVIEW NUMBER TWO:** The court of appeals erred by applying an incorrect standard of review. The court of appeals failed to apply an appropriately deferential standard of review to Appellant's motion for new trial raising new recantation evidence.

(Op. at 27)

**Reasons for Review:**

1.     The panel decision of the Fourteenth Court of Appeals requires review because the court decided an important question of state law that that is in conflict with the applicable decisions of this Court on the same matter. The decision of the Fourteenth Court of Appeals is in conflict with this Court's holdings in *Keeter v. State*, 74 S.W.3d 31, 37 (Tex. Cr. App. 2002) and *Williams v. State*, 375 S.W.2d 449, 451 (Tex. Cr. App. 1964).

2.     The panel decision of the Fourteenth Court of Appeals requires review because the court has misconstrued a state statute. The court misconstrued TEX. CRIM. PROC. CODE ANN. art. 40.001.

3.     The panel decision of the Court of Appeals requires review because the court of appeals has decided an important question of state law, which has not been, but should be settled by this Court.

**Argument and Authorities:**

To meet the statutory requirement of materiality set forth in Article 40.001, a defendant must show that: (1) the evidence was unknown or unavailable to him at the time of trial; (2) his failure to discover or to obtain the evidence was not due to lack of diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true

22

and will probably bring about a different result on another trial. *Keeter*, 74 S.W.3d at 36–37.

The general rule is that where a witness has testified to material inculpatory facts against an accused and after verdict, and before motion for new trial has been acted upon, such witness makes affidavit that he testified falsely, a new trial should be granted. *Williams v. State*, 375 S.W.2d 449, 451 (Tex. Cr. App. 1964). A trial court acts within its discretion in disbelieving a recantation only when the record provides some basis for disbelieving the testimony. Such bases include, but are not limited to, evidence that the recanting witness was subject to pressure by family members or threats from co-conspirators, evidence showing part of the recantation to be false, circumstances showing that the complainant recanted after moving in with family members of the defendant, and an accomplice's recantation after being convicted. *Keeter,* 74 S.W.3d at 37-38.

B.     Appellant met the four prong test of *Keeter v. State*.

In the case at bar, Nereyda Bautista recanted her trial testimony in total and explained that she lied about her father because she was in fear of the prosecutor and CPS workers. (RR XIX at 8). Ms. Bautista was scared that if she did not continue with her false accusations, that CPS would take her and her sisters away

23

from her mother, as they had done in the past. (RR XIX at 8-9). Ms. Bautusta initiated the contact with trial counsel in order to make her post-trial recantation. (RR XIX at 7). She was not pressured to recant by her family. (RR XIX at 15). Ms. Bautista expressed remorse over her false accusations and apologized to the court. (RR XIX at 15).

Ms. Bautista's affidavit and testimony completely exonerate the Appellant. Ms. Bautista's testimony conclusively establishes that her testimony was false. There was no basis to disbelieve the recantation. She admitted that she was not pressured to recant. Moreover, she had also recanted before trial. The previously unavailable evidence was material, favorable, and would probably lead to a different result at trial and/or punishment.

Because the four *Keeter* prongs were met, the trial court was required to grant Appellant a new trial under Section 40.001 of the Texas Code of Criminal Procedure, and abused its discretion in failing to do so. See TEX. CRIM. PROC. CODE ANN. art. 40.001. ("A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial.")(emphasis added).

The court of appeals found that the evidence presented by the State to rebut Nereyda's first recantation was sufficient for the trial court to find that the second, post-trial recantation was not "probably true." This was an inappropriate lens by

24

which to review the new recantation evidence. If anything, the second post-trial recantation should have bolstered the first. The Court of Appeals erred by failing to review the evidence (or lack thereof) presented by the State at the new trial hearing to support their theory that the second recantation was false.

## PRAYER FOR RELIEF

FOR THESE REASONS, Appellant respectfully asks this Court to grant review of the decision of the court of appeals. Appellant further prays that this Court will reverse the judgment of the court of appeals.

Respectfully submitted,

By: /s/ R. SCOTT SHEARER
**R. Scott Shearer**
TBA No. 00786464
929 Preston, Suite 200
Houston, Texas 77002
(713) 254-5629
(713) 224-2889 FAX
*ShearerLegal@Yahoo.com*

**Attorney for Appellant**
**(Pro Bono)**

January 21, 2015

26

**CERTIFICATE OF SERVICE**

I certify that a copy of this Petition for Discretionary Review has been served upon the State of Texas by e-mailing a copy of same to the following parties at their respective addresses on this the 21st day of January, 2015:

LAURIE SELLERS. A.D.A.
WALLER COUNTY DISTRICT ATTORNEY
645 12th STREET
HEMPSTEAD, TX 77445

/s/R. SCOTT SHEARER
**R. Scott Shearer**

# CERTIFICATE OF COMPLIANCE WITH RULE 9.4(i)(3)

Certificate of Compliance with Type-Volume Limitations
and Typeface Requirements.

1.    This Petition for Discretionary Review complies with the type-volume limitation of TEX. R. APP. PROC. 9.4(i)(2) and (3) because:

        This Petition for Discretionary Review contains **3,725** words, excluding the parts of the Petition for Discretionary Review exempted by TEX. R. APP. PROC. 9.4(i)(1).

2.    This Petition for Discretionary Review complies with the typeface requirements of TEX. R. APP. PROC. 9.4(e) because:

        this Petition for Discretionary Review has been prepared in a conventional proportionally spaced typeface using Microsoft WORD 97 version 7.0 in Times New Roman 14 point type.

/s/R. SCOTT SHEARER
**R. Scott Shearer**

28

APPENDIX

**Affirmed and Opinion filed November 20, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00457-CR

---

**VALDEMAR BAUTISTA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 506th Judicial District Court**
**Waller County, Texas**
**Trial Court Cause No. 11-05-13821**

---

## O P I N I O N

This case involves a challenge to a conviction for the offense of "continuous sexual abuse of a child." Appellant argues that the conviction is not supported by sufficient evidence and asserts several additional errors that he alleges prevented him from adequately challenging the complainant's credibility. In particular, he alleges that the trial court erred in failing to grant a continuance after the complainant testified that she had received a medical exam and also asserts that the State wrongly suppressed evidence of the exam. He also challenges the trial

court's denial of a motion for a new trial based on newly-discovered evidence that the complainant recanted post-trial. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The complainant first made outcry when she was in the seventh grade by revealing incidents of sexual abuse to her school principal. The principal encountered the complainant's younger sister crying in the hallway at school and learned that the sister was afraid to go home. The complainant's sister disclosed that appellant Valdemar Bautista, her father, touched her and the complainant inappropriately. The sister stated that sometimes while she was asleep with the complainant, appellant would enter their room, get into their bed in between them, and touch them inappropriately. Upon hearing this information, the principal called the complainant out of class and queried her regarding her life at home. The complainant disclosed that appellant regularly came into the room she shared with her sister at night, laid down with them, and touched them inappropriately. During the interview, the girls were extremely distraught and held onto each other crying for a long time. As a result of the disclosures, the girls and their siblings were taken into custody by state authorities. The complainant was interviewed twice at the Child Advocacy Center. In her interviews, the complainant disclosed that appellant frequently required her to perform a variety of sexual acts. The complainant maintained her account throughout therapy and her interactions with the Texas Department of Family and Protective Services.

Appellant was charged by indictment with the felony offense of "continuous sexual abuse of a child," to which appellant pleaded "not guilty." At a bench trial, the State offered testimony from several witnesses including the complainant, a woman who interviewed the complainant at the Child Advocacy Center, and the complainant's school principal, therapist, and caseworker, among others. These

2

witnesses stated that both the complainant and the complainant's sister provided consistent, detailed descriptions of a variety of sexual acts in which they claimed the appellant forced them to engage. Appellant presented the testimony of the complainant's younger sister, who testified that she and the complainant fabricated the allegations because they were afraid of being disciplined.

The trial court found appellant guilty as charged and sentenced him to a term of forty years' confinement. Appellant filed a motion for new trial on the asserted grounds that favorable evidence was discovered after trial and that the State withheld evidence of medical exams. The trial court denied appellant's motion for new trial. Appellant now appeals his conviction, raising five appellate issues in which he challenges the legal sufficiency of the evidence and various trial court rulings.

## II.    ISSUES AND ANALYSIS

### A. Sufficiency of the Evidence

In his first issue, appellant asserts that the evidence is insufficient to support his conviction. In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony.

3

*Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party.  *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm.  *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits the offense of "continuous sexual abuse of a child," as applicable to the case under review, if (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.  Tex. Penal Code. Ann. § 21.02(b) (West 2014). [1]   An "act of sexual abuse" is an act that violates one or more specified penal laws, including section 21.11(a)(1), entitled "Indecency with a Child," and section 22.021, entitled "Aggravated Sexual Assault."  A person commits the offense of "Indecency with a Child" if the person "engages in sexual contact with the child or causes the child to engage in sexual contact."  *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2014).  A person commits the offense of "Aggravated Sexual Assault" if the person intentionally or knowingly causes the penetration of the sexual organ of a child under the age of fourteen by any means. *See* Tex. Penal Code Ann §§ 22.021 (a)(1)(B)(i), (ii), (iii), (iv), (v), (a)(2)(B) (West 2014).  In this case, the indictment alleged that on more than one occasion appellant: 1) intentionally or knowingly engaged in sexual contact with the complainant by touching her genitals, 2) caused the complainant to touch

---

[1] We note that despite the use of the word "continuous" in the statute, only continual sexual abuse is required*, i.e.,* two or more acts of sexual abuse during a period that is 30 days or more in duration; the statute does not require nonstop, incessant, unbroken, or unceasing sexual abuse as use of the term "continuous" would suggest.

4

appellant's genitals, 3) penetrated the complainant's mouth with appellant's sexual organ, and 4) caused the penetration of the complainant's sexual organ with appellant's sexual organ. The indictment alleges that during these acts appellant was 17 years of age or older and the complainant was a child younger than 14 years of age.

At trial, the complainant's school principal and school vice-principal testified that they questioned the complainant and her sister separately regarding the appellant's actions. The two girls made similar disclosures. Both sisters continued to allege, throughout their interactions with caseworkers and therapists, that appellant forced them to perform sexual acts. The complainant testified at trial that appellant began touching her breasts when she was around eight or nine, but that the touching escalated when she was around eleven, twelve, or thirteen. At that point in time, appellant began forcing her to engage in intercourse with him.

The complainant explained that the first time appellant forced her to engage in intercourse she felt pain and found blood on her sheets, which she stated she threw away the next morning. The complainant testified that after that incident, appellant forced her to engage in intercourse frequently up until she disclosed the abuse. The complainant testified that in addition to forcing her to engage in intercourse appellant would tell her to "scratch him on the sides of his private stuff." When she would do this, appellant's penis was hard, smelled, and was "nasty." The complainant testified that she felt something wet and sticky. She could not identify the substance at the time, but she now knows that it was sperm.

The forensic interviewer from the Child Advocacy Center testified that in the first interview the complainant disclosed that appellant had touched the complainant inappropriately; later, the complainant disclosed that appellant forced her to engage in a variety of sexual acts. The interviewer stated that the

5

complainant was shy, timid, and nervous in the first interview and more confident in the second. At the end of the interview, the complainant asked the interviewer if the complainant would be able to have children after these events. The complainant's caseworker for the Texas Department of Family Services testified that she was present in family therapy sessions when the complainant and her sister disclosed the abuse to the rest of their family. The caseworker testified that initially the complainant was fearful and had to be prompted to speak in Spanish instead of English so that her mother could understand the disclosures. Both the complainant and her sister would make a disclosure and then cry.

The complainant admitted that she later told appellant's attorney that the allegations she had made were untrue. She explained that she recanted because her younger sisters were crying and asking for appellant. She stated that additionally, she was relying on a statement by appellant's attorney that appellant would not get close to her after getting out of jail. The complainant explained that the recantations were not true and that she eventually decided to tell the truth because that was the way to protect her sisters. The complainant's therapist testified that the complainant was pressured to recant by her older siblings and members of her family's church.

The State presented sufficient evidence to support appellant's conviction. *See* Tex. Code Crim. Proc. Ann. Art. 38.07 (West 2011); *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding a child-complainant's testimony established element of penetration beyond a reasonable doubt). Appellant argues that the evidence is insufficient to support his conviction. He asserts that the evidence shows the complainant and her sister fabricated allegations to avoid corporal punishment for wearing pants to school, an act that is prohibited by appellant's religion. In support of this argument, appellant notes

6

that:

- There was no physical evidence of abuse.

- Appellant has no prior history of sexual abuse.

- Appellant worked long hours, usually seven days a week.

- No other witness claimed to have witnessed the inappropriate behavior.

- The first outcry came shortly after appellant observed the complainant's sister wearing pants to school.

- The complainant recanted her testimony and stated that she was not pressured to recant.

- The complainant had a reputation in the family for "telling untruths."

- The complainant's testimony was inconsistent with her sister's testimony with respect to whether appellant slept in their bed, her allegation that appellant abused her sister, and her statement that she informed her sister about the bloody sheets. The complainant's mother also testified she did not notice a missing sheet.

- The complainant testified that her mother was frequently out of the house at parties or in Oklahoma but the complainant's sister testified that their mother did not party and visited Oklahoma only once a year.

- The complainant's account was inconsistent with respect to whether her mother knew about the abuse and her testimony was inconsistent with her mother's testimony regarding the mother's knowledge.

Appellant's arguments that he worked long hours, has no prior history of sexual abuse, and that no other witnesses claimed to have witnessed the inappropriate behavior do not refute the complainant's testimony. Appellant's argument that there was no physical evidence of the abuse is insufficient to overturn his conviction. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978) (holding that victim's testimony is sufficient to prove sexual contact occurred even in absence of physical evidence); *Tinker v. State*, 148 S.W.3d 668, 669 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (same).

The rest of appellant's arguments amount to an attack on the complainant's

7

credibility. The trier of fact is the sole judge of the credibility of the witnesses. *Fuentes*, 991 S.W.2d at 271. We presume that the trial court, as trier of fact, credited the outcry statements and discredited the recantations. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (stating that recantation does not destroy probative value of outcry statement and that the factfinder is free to disbelieve recantation); *Chavez v. State*, 324 S.W.3d 785, 788 (Tex. App.—Eastland 2010, no pet.) (holding sufficient evidence supported conviction where victim made outcry statement and then recanted at trial).

We conclude that sufficient evidence supports appellant's conviction. *See Villalon*, 791 S.W.2d at 134. Accordingly, appellant's first issue is overruled.

### B. Denial of Motion for New Trial Based Upon Newly-Discovered Evidence

In his second issue, appellant argues that the trial court abused its discretion in denying his motion for new trial based upon newly-discovered evidence. In particular, appellant states that the complainant issued a post-trial recantation. At the hearing on the motion for new trial, the complainant testified that her trial testimony was untrue. She stated that she lied during the trial because she was afraid that the prosecution would separate her from her family if she admitted that her allegations were fabricated.

A ruling on a motion for new trial will not be disturbed absent an abuse-of-discretion. *Keeter v. State*, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002). Texas Code of Criminal Procedure Article 40.001, entitled "New Trial on Material Evidence," provides that "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." Tex. Code Crim. Proc. Ann. art. 40.001 (West 2014). Newly-discovered evidence satisfies the "materiality" standard in the statute if:

8

> (1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial; (2) the movant's failure to discover or obtain the evidence was not due to lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and, (4) the new evidence is probably true and will bring about a different result on another trial.

*Keeter*, 74 S.W.3d at 37. A new trial should be granted where a witness testifies to material exculpatory facts against an accused and recants after the verdict, but before a motion for new trial has been acted upon, only if the new evidence is "probably true." *Id.* It is within the trial court's discretion to discern the credibility of the witness and whether the new evidence is "probably true." *Id.* The trial court does not abuse its discretion in denying a motion for a new trial based on a recantation so long as the record provides some basis for disbelieving the testimony. *Id.* One basis for disbelieving a recantation is evidence that the recanting witness was subject to pressure by family members. *Id.*

The record reveals several reasons to disbelieve the complainant's post-trial recantation. The complainant had issued a pre-trial recantation, which was the subject of a substantial amount of trial testimony. At trial, the forensic interviewer testified that recantation is a stage of disclosure, and the Director of the Fort Bend Child Advocacy Center testified that sometimes children feel pressured to recant because the consequences of having disclosed abuse seem more difficult to endure than the abuse. She also testified that siblings can have a huge impact on a child-victim's response and that sometimes siblings are harsh to the victim in their attempt to keep the family together.

At trial, the complainant's sister, who previously had disclosed being abused by appellant, testified that she was afraid to go home on the day she first disclosed the abuse to her school principal, but after the principal described the role of Children's Protective Services, her "heart broke." The sister testified that she

9

thought she was going to a wonderful place, but that she ended up separated from her siblings and she never thought any of those consequences would occur as a result of her statements. The sister stated that she cried to the complainant and told her she wanted to go home because she missed her family. Two other siblings testified in support of their father and accused the complainant of lying. The complainant testified that she originally recanted in an effort to protect her younger sisters, who would cry and ask for their father, but the complainant then explained that she decided to testify truthfully at trial because she realized that telling the truth was the real way to protect them. The complainant's therapist testified that the complainant also had been pressured to recant by her older siblings and members of her father's church.

The record evidence would enable the trial court to conclude that the complainant was subject to pressure by family members, including her siblings. This evidence provided the trial court with a sound basis to determine that the post-trial recantation likewise was a result of pressure and that it was not "probably true." Accordingly, the trial court did not abuse its discretion by denying appellant's request for a new trial on the basis of the newly-discovered evidence of recantation. *See Keeter*, 74 S.W.3d at 37. We overrule appellant's second issue.

### C. Denial of Motion for Continuance

In his third issue, appellant asserts that the trial court abused its discretion in denying his motion to continue trial based on the complainant's testimony that she underwent a forensic medical exam. Specifically, the complainant testified at trial that while she was in the custody of state authorities she went to a hospital and a woman ran tests on her. The complainant did not know the results of the tests.

We review a trial court's ruling on a motion for a continuance under an abuse-of-discretion standard. *See Duhamel v. State*, 717 S.W.2d 80, 83 (Tex.

10

Crim. App. 1986). Under the Texas Code of Criminal Procedure, the trial court is permitted to grant a continuance "when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be held." Tex. Code of Criminal Proc. Ann. art. 29.13 (West 2014). When reviewing the trial court's denial of a motion for continuance, we examine the circumstances presented to the trial court and determine whether the trial court abused its discretion in denying the motion. *Rodriguez v. State*, 21 S.W.3d 562, 565 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

Appellant asked to subpoena the records of "Texas Department of Family and Protective Services, CASA, medical physicians, psychiatrists, counselors, [and] therapists." Appellant agreed with the trial court's recommendation to remove the request that physicians disclose their records out of the fear that the Texas Department of Family and Protective Services would not comply with any portion of the request if it determined that providing medical records would violate the Health Insurance Portability and Accountability Act (HIPAA). In appellant's motion for this discovery, though, he stated that physicians had information relevant to the complainant and her siblings. It is apparent from the face of this motion that appellant knew medical exams may have been performed.

The record also reveals that appellant's counsel had access to the complainant and that she was cooperative with appellant's counsel in the months leading up to trial. Appellant had ample time to ask the complainant if she had undergone any medical exams and to seek the trial court's assistance in obtaining relevant results, but instead, appellant apparently waited until trial to ask the complainant that question. *See Williams v. State,* 768 S.W.2d 337, 341 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) (holding that trial court did not err in

11

denying motion for continuance to examine bloody jacket because defendant could have examined jacket before trial); *Hernandez v. State*, 825 S.W.2d 765, 768 (Tex. App.—El Paso 1992, no pet.) (holding that reasonable diligence would have eliminated any surprise in trial testimony). The evidence in this record supports the trial court's determination that appellant was not surprised by the testimony. The trial court did not abuse its discretion in denying appellant's motion for a continuance after the start of trial on the basis that appellant was not surprised by the complainant's testimony about the medical exams. *See* Tex. Code Criminal Proc. art. 29.13 (West 2014); *Williams*, 768 S.W.2d at 341. Accordingly, we overrule appellant's third issue.

## D. State's Alleged Wrongful Withholding of Evidence

In appellant's fourth issue, he asserts that he was denied due process of law because the State withheld evidence tending to establish his innocence. In particular, appellant alleges that the State possessed evidence of a medical exam that he speculated showed the complainant's hymen had not been ruptured. Appellant argues that possessing and failing to disclose this evidence violates the requirements of *United States v. Bagley*, 473 U.S. 667, 669, 105 S.Ct. 3375, 3376 – 77 (1985) and *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196 (1963).

The State violates an accused's right to due process of law if it suppresses favorable evidence that is material to either guilt or punishment. *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. To establish reversible error under *Brady* and *Bagley*, a defendant must show that: (1) the State failed to disclose evidence, regardless of the prosecutor's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Ex Parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012); *Hampton v. State*,

12

86 S.W.3d 603, 612 (Tex. Crim. App. 2002).  The State has a constitutional duty to disclose to a defendant material, exculpatory evidence in its possession.  *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011).  This duty also requires the State to learn of *Brady* evidence known to others acting on the State's behalf in a particular case.  *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006).  But, *Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist.  *Id.* at 407.  The State does not have such a duty to disclose evidence if the defendant actually was aware of the evidence or could have accessed it from other sources.  *Pena*, 353 S.W.3d at 810.

The District Attorney's Office in Waller County maintained an open-file policy.  The prosecuting attorneys informed  defense counsel of this policy during pre-trial status conferences and defense counsel did not advise the trial court that he had any difficulty accessing the State's files.  At the motion for new trial, appellant presented an unsworn, unauthenticated document purporting to be a paragraph copied from an e-mail from an individual associated with the Texas Department of Family and Protective Services.  The purported e-mail explains that the complainant and two of her sisters had forensic interviews and forensic medical interviews, but "it is suspected" that the complainant and her sisters never had "well-woman" appointments.  The e-mail states, "[o]utcomes of appointments obtained by Waller County Sheriff's Department — Sharlonda Rutledge and fwd to Laurie Sellers."

At trial, Officer Sharlonda Rutledge testified that she was present for forensic interviews and requested medical exams.  She also testified that she did not think medical exams were conducted, although she was not sure if they were done.  She testified that she never received any medical records and that she did

13

not have any notice that medical exams were completed. She stated that to obtain medical records she either had to call the clinic or get the records via a grand jury subpoena, depending on the facility. Officer Rutledge testified that records were not subpoenaed, that she attended two sets of forensic interviews, wrote a report, and presented the report to the prosecutor.

Presuming for the sake of argument that the e-mail the e-mail presented by appellant in his motion for new trial was authenticated, it does not prove that the District Attorney's office had the results of any medical exam. First, the e-mail states that the children had "forensic medical interviews." It is unclear if a medical interview is an exam. Then, the e-mail states that it is suspected the children never had "well-woman appointments." Finally, the e-mail conveys merely that "outcomes of appointments" were obtained by the Waller County Sheriff's Department. The e-mail is ambiguous both with respect to whether a physical exam occurred and as to whether results from any medical exam were sent to the State. It is unclear what the State received, if anything, in terms of "outcomes." The e-mail is consistent with the State possessing the information that the State claimed to possess—results from forensic interviews with the children. The State maintained an open file policy and granted appellant access to its records. Appellant has not presented evidence that the State had access to additional medical records and withheld those records from him.

Even if appellant had established that the State had access to medical records, appellant has not proven that those records contained any information favorable to him. Appellant speculates that the records may have shown that the complainant's hymen was intact, but offers no proof that the records contained this information. Even if the records did contain this information, however, appellant bears the burden of showing that, in light of all the evidence, it is reasonably

14

probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure of this evidence. *See Hampton*, 86 S.W.3d at 612. The mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish "materiality" in the constitutional sense. *Id.* Thus, appellant has not proven that the complainant could not have suffered sexual abuse and maintained an intact hymen. Appellant has not established that the evidence withheld was both favorable and material. *See id.*

After examining the trial record, we conclude appellant has not shown that he was denied due process of law because the State withheld material, exculpatory evidence. Therefore, we overrule appellant's fourth issue.

### E. Denial of Motion for New Trial Based on Alleged *Brady* and *Bagley* Violations.

In his fifth issue, appellant asserts that the trial court erred in denying his motion for new trial on the basis of the alleged *Brady* and *Bagley* violations. As discussed above, appellant has not shown the State withheld material, exculpatory evidence. Accordingly, the trial court did not abuse its discretion in denying appellant's motion for new trial. *See Harm*, 183 S.W.3d at 409. We overrule appellant's fifth issue.

## III. CONCLUSION

Appellant's conviction is supported by sufficient evidence. The trial court did not abuse its discretion in denying appellant's motion for new trial based on the complainant's post-trial recantation where the record provided the trial court a basis for believing that the recantation was not "probably true" evidence. Nor did the trial court abuse its discretion in denying appellant's motion to continue where the evidence did not create a surprise. Finally, the trial court did not abuse its discretion in denying appellant's motion for new trial on the basis of his *Brady* and *Bagley* claims. Appellant did not prove that the State withheld exculpatory, material evidence.

The judgment of the trial court is affirmed.


/s/     Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Donovan and Brown.

Publish — TEX. R. APP. P. 47.2(b).