**Affirmed and Memorandum Opinion filed May 14, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00802-CR

---

**JAMES ALSUP HILL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 16-CR-2042**

---

## MEMORANDUM OPINION

Appellant James Alsup Hill challenges his conviction for indecency with a child, asserting that the State's proof on each element of the offense is insufficient to support his conviction. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant, walking cane-assisted on his daily neighborhood stroll, stopped for a rest on a bench in front of a daycare center. Next door, Eric, a new resident

in the neighborhood, was doing yard work. Appellant had introduced himself to Eric before. Gordon,[1] Eric's eleven-year old stepson, was outside playing and helping Eric with chores. When Gordon noticed appellant resting on a swinging bench outside in his neighbor's yard, he offered to get him water. Appellant accepted, and when Gordon gave appellant the water he asked if appellant would like to come inside and watch television to get out of the heat. According to Gordon, appellant responded, "I haven't seen your room," and proceeded in unsuccessful attempts to open the back gate himself. Gordon told appellant to go through the garage instead. As Eric was busy mowing the lawn, Eric did not see Gordon show appellant inside their home.

A short time later Gordon ran out of the house alone "extremely upset" and "crying." Eric noted these "are two things that never happen with this kid." Between his emotion and tears Gordon reported to Eric that appellant had been inappropriate with him in the house.

Gordon's family made a complaint and the League City Police Department investigated. An indictment followed, charging appellant with indecency with a child. The jury found appellant guilty and assessed his punishment. The trial court sentenced appellant to four years' confinement.

In a single appellate issue, appellant challenges the sufficiency of the evidence to support his conviction for indecency with a child.

## II. SUFFICIENCY OF THE EVIDENCE

In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *Torres v. State*, 424 S.W.3d 245, 251 (Tex.

---

[1] To protect the privacy of the child-complainant, we identify him by the pseudonym "Gordon."

App.—Houston [14th Dist.] 2014, pet. ref'd). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). Rather, the verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact is the sole judge of the credibility of the witnesses and of the strength of the evidence. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits the offense of indecency with a child if the person "engages in sexual contact with the child or causes the child to engage in sexual contact." *See* Tex. Penal Code Ann. § 21.11(a)(1). "Sexual contact" is an act committed with "the intent to arouse or gratify the sexual desire of any person," and includes a person's "touching through clothing of . . . any part of the genitals of a child." *See* Tex. Penal Code Ann. § 21.11(c)(1). The indictment alleged that on or about June 13, 2016, when Gordon was a child younger than 17, appellant engaged in sexual contact with Gordon by touching the genitals of Gordon with an intent to arouse or gratify the sexual desire of appellant.

At trial, Gordon, his mother, and his stepfather (Eric) testified, along with

3

two investigating police officers. Appellant did not testify at trial.

Gordon, who was twelve years old at the time of trial, testified in detail about his encounter with appellant, describing the event as follows:

Q. So he sits on the -- Mr. Hill sits down on your bed. What happens next?

A. I put the remote down and then he grabs me.

Q. How does he grab you?

A. By the elbow.

Q. And after he grabs you, what happens next?

A. He pulls me on his lap.

Q. And when you are sitting on his lap, what happens?

A. He starts rubbing my genitals.

Q. Okay. And what do you do?

A. Try to get back up.

Q. And are you able to get back up?

A. No, ma'am.

Q. And do you remember what you guys were talking about? What was Mr. Hill saying to you?

A. "Is it big."

Gordon testified that he did not know what appellant meant by that question. Gordon further explained that the rubbing he described occurred over his clothes, and that appellant persisted in controlling Gordon's hand to make Gordon touch appellant's genitals. Gordon explained that he resisted, and ultimately managed to leave by telling appellant he had to go to the bathroom. Gorton testified that appellant responded "Okay. Be quick." Gordon said he did not go to the bathroom but instead went outside to see Eric.

As Gordon's outcry witness, Eric testified that Gordon told him that appellant "was touching him inappropriately" and that "he needed [Eric] to help

4

him." Eric further testified Gordon told him that "[appellant] made [Gordon] touch him inappropriately." According to Eric, Gordon reported that "[appellant] sat down on the bed and he pulled him down next to him and wouldn't let [Gordon] up and that he made [Gordon] touch his private area." Eric testified that while Gordon was telling him these things, he saw appellant exit the house "rushing" in a way that made it seem like appellant did not need the cane.

Eric testified he did not call Gordon's mother immediately after the incident because he did not want her to have a car accident on the way home. Eric testified that he tried to get Gordon to calm down, to make it through the rest of the afternoon until Gordon's mother arrived home from work. Eric testified that he called the police department directly and left a voice message reporting the incident. The police could not confirm receipt of the message. When Gordon's mother arrived, she learned of the incident, picked up her keys, and directed everyone to the car to go to the police department. As the three walked outside, appellant was walking down the street. At trial, Gordon's mother testified about her exchange with appellant:

> Q. So you see Mr. Hill walking. Is he walking towards you or away from you?
>
> A. Towards our house.
>
> Q. Towards your house. What happens next?
>
> A. I got really pissed off, and I ran up to him.
>
> Q. And did you confront him about something?
>
> A. I did.
>
> Q. And what did he say in response?
>
> A. He said, "Yes, I did."
>
> Q. And did he say anything else?
>
> A. I said several things to him and he kept saying "yes" and that he was sorry and I had said that he needed to get off of the street, he

5

couldn't be around my house, my son anymore. And he said he didn't have to, it was his street.

Q. And what happened after that?

A. I'm sure I said some other curse words and we got in the car and we drove straight to the police department.

Q. And at the police department did you make a report?

A. Yes.

Eric testified that he overheard appellant apologize to Gordon's mother and say that he had problems. When asked if Gordon had ever had any issues as far as his credibility, Eric answered, "No. He's a kid. But he'll be honest if you ask him direct questions. And sometimes he'll volunteer honest answers even if you don't."

The jury could have relied on Gordon's testimony alone to find the requisite elements of touching and intent to arouse or gratify appellant or Gordon. *See* Tex. Code Crim. Proc. Ann. art. 38.07; *Sansom v. State,* 292 S.W.3d 112, 122–23 (Tex. App.--Houston [14th Dist.] 2008, pet. ref'd) ("The uncorroborated testimony of a child victim, standing alone, is sufficient to support a conviction for indecency with a child."); *see also Bautista v. State*, 474 S.W.3d 770, 776 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (finding child-complainant's testimony sufficient for conviction even in the absence of physical evidence or a prior history of sexual abuse by defendant). Although courts consider the testimony of child-complainants with an understanding that they may not relay events with the same clarity and ability as is expected of adults, Gordon's testimony is not lacking in clarity. *See Carr v. State*, 477 S.W.3d 335, 340 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

Appellant contends that the only evidence of the contact for which he was charged — the touching of Gordon's genitals — was Gordon's own testimony, cited above, which appellant sums up as a statement that appellant "started rubbing

6

my genitals . . . over my clothes." To the extent appellant raises an issue as to whether the sexual contact occurred under Gordon's clothes or through them, it does not matter. The statutory definition of the offense specifically includes touching "through clothing." *See* Tex. Penal Code Ann. § 21.11(c)(1). Accordingly, the jury was free to credit this evidence to find that the requisite statutory physical contact occurred. *See* Tex. Code Crim. Proc. Ann. art. 38.07; *Sansom v. State,* 292 S.W.3d 112, 122–23 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).

Appellant also contends that the lack of evidence showing he had a history of grooming Gordon or of inappropriate contact with Gordon suggests an insufficiency of proof. The requisite intent to arouse or gratify the sexual desire of a person can be inferred from conduct, remarks, and all the surrounding circumstances. *Gregory v. State*, 56 S.W.3d 164, 171 (Tex. App.—Houston [14th Dist.] 2001, pet. granted). The law does not require proof of grooming or prior inappropriate contact.

Appellant also complains that the record lacks evidence showing what part of appellant's body rubbed Gordon, what position the two were in when the rubbing happened, or the duration of the rubbing event. Appellant contends these were "essential" facts. Appellant has not cited any authority to support this argument, and the Texas Penal Code does not provide that such facts are "essential" to the offense charged. *See* Tex. Penal Code Ann. § 21.11(a), (c)(1).

Appellant's duration-of-contact contention is based on *Morgan*, a case in which the child-complainant testified that the defendant had picked her up, touched her "where she goes to the bathroom" for a duration that was "pretty quick," and ultimately denied on direct examination that "rubbing" occurred. *See Morgan v. State*, 692 S.W.2d 877, 878 (Tex. Crim. App. 1985) (stating that absent other

evidence of extraneous acts, "we would be compelled to agree that the evidence is insufficient."). Gordon testified that appellant grabbed him by his elbow and that appellant pulled him to his lap—that is where the factual similarities with the *Morgan* case end. Unlike the complainant in *Morgan*, Gordon unequivocally testified that appellant began rubbing his genitals above his clothing, that appellant asked "if it was big," and commandeered Gordon's hand toward his own genitals. Gordon did not deny on direct examination that "rubbing" occurred. The facts of this case differ significantly from the facts in *Morgan*. *See id*. Thus, to the extent appellant contends the contact was not shown to be anything other than accidental, the record evidence shows otherwise. Based on the evidence, the jury reasonably could have concluded that the contact was not accidental and that appellant acted with an intent to arouse or gratify himself or Gordon.

Appellant contends that the record contains no evidence of "any sexual comments or suggestions to Gordon." Even putting aside appellant's "Is it big?" inquiry, we could find no factual or legal merit in this argument. The statute requires no oral expression of intent. *Gregory v. State*, 56 S.W.3d 164, 171 (Tex. App.—Houston [14th Dist.] 2001, pet. granted). Appellant also argues the lack of evidence of an erect penis suggests the lack of specific intent. This argument also lacks merit. *Id*. ("Nor is there a requirement that a male offender's penis be erect"). The jury was free to conclude from appellant's "Is it big?" inquiry in the context of the rubbing, that appellant had an intent to arouse or gratify. Likewise, the jury was free to consider the evidence of appellant's apology to Gordon's mother and Eric's testimony as to the speed of appellant's departure following Gordon's outcry as probative evidence of appellant's guilt. *See Yost v. State*, 222 S.W.3d 865, 877 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (holding that defendant's statements in letter sent from jail that "I am sorry for everything" and

"please forgive me" were circumstance indicating guilt); *Clayton v. State,* 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) (stating that a "factfinder may draw an inference of guilt from the circumstance of flight").

### III. CONCLUSION

We conclude the evidence is sufficient on each of the essential elements of appellant's indecency-with-a-child conviction. Accordingly, we overrule appellant's sole appellate point and affirm the judgment of the trial court.

/s/ Kem Thompson Frost
   Chief Justice

Panel consists of Chief Justice Frost and Justices Zimmerer and Hassan.

Do not publish — TEX. R. APP. P. 47.2(b).